IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 23, 2010

## STATE OF TENNESSEE, ex rel., MISTY D. MURPHY v. NICHOLAS A . FRANKS

**Direct Appeal from the Juvenile Court for Lauderdale County**
**No. J6-351    Rachel J. Jackson, Judge**

---

**No. W2009-02368-COA-R3-JV - Filed April 30, 2010**

---

Appellant/Father appeals from the trial court's finding that he was in contempt for failure to pay child support. After reviewing the record, we find that the evidence preponderates against the trial court's findings of fact. The trial court's finding of contempt is reversed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Reversed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Mary C. Mayham, Covington, Tennessee, for the appellant, Nicholas A. Franks.

Robert E. Cooper, Jr., Attorney General and Reporter; and Michael E. Moore, Solicitor General; Warren A. Jasper, Senior Counsel, for appellee, State of Tennessee, ex rel., Misty Murphy.

## OPINION

On June 9, 2008, the Appellee, State of Tennessee *ex rel.* Misty Murphy (the "State") filed a Petition for Contempt against Appellant, Nicholas A. Franks ("Mr. Franks") in the Juvenile Court of Lauderdale County. According to this petition, the Juvenile Court entered an order on November 7, 2006, modifying child support and requiring Mr. Franks to pay $295.00 per month. In the 2008 petition, the State alleged that Mr. Franks had refused to pay and was in arrears $3,009.50 as of January 31, 2008.

On May 7, 2009, the State filed a Petition for Civil Contempt against Mr. Franks. In pertinent part, the State alleged that Mr. Franks had been ordered to pay child support, that he had the ability to pay the child support, and that he had refused to pay as ordered.

Consequently, the State asked the trial court to find Mr. Franks in contempt of court pursuant to Tennessee Code Annotated § 29-9-104(a), to enter a judgment for prospective child support, and to enter a judgment against Mr. Franks for arrears. A notice of hearing was also filed on May 7, 2009 stating that the hearing on the petition would be held on July 2, 2009. The notice indicates that it was mailed to Mr. Franks on or about May 7, 2009. On July 2, 2009, Mr. Franks filed an affidavit of indigency and asked that the trial court appoint an attorney to represent him. The record indicates that an attorney was appointed.

The State's petition was heard on August 27, 2009. Mr. Franks was the only witness to testify at the trial.[1] Mr. Franks testified that he currently lives with his wife, and at times stays with his mother. According to his testimony, he and his wife were one-half month behind on rent. Mr. Franks testified that he is current on his cell phone and electric bills. He admitted that he was behind on his child support payments, and stated that he believed that the arrearage was over $7,000.00. When asked if $8,147.50 would be in the "ballpark," Mr. Franks said he "would imagine." Mr. Franks testified that he was not sure what his current child support obligation was, but that his last full payment was sometime in 2007, and his last payment of any amount was on April 17, 2009 in the amount of $30.00.

In regard to his job situation, Mr. Franks admitted that he had not looked for work in the last three weeks. He explained that he is not looking for work because he has a son with bipolar disorder that he needs to be around to help with, that he has another child which he cannot afford daycare for, and that he does not have a driver's license. Mr. Franks testified that bipolar disorder runs in his family, that he has also been diagnosed with it, and introduced into evidence copies of the prescriptions for his medications to address his bipolar disorder. Mr. Franks testified that he had not been able to fill all of his prescriptions because he could not afford to do so, and because he has been off his medication he has difficulty controlling his temper. Mr. Franks testified that this affected his ability to work. On cross examination, Mr. Franks admitted that he has not seen a doctor about his bipolar disorder since 2006, but explained that he could not afford to do so. Mr. Franks also testified that he had issues with his bladder and introduced evidence of his prescription to address that health concern. Also, Mr. Franks testified that he had an issue with his knee which began in 2006.

---

[1]The appellate record contains a transcript of the August 27, 2009 hearing. It does not appear to have been prepared by a court reporter; rather it appears as if someone has typed an audio recording of the proceeding. In his designation of the record, Mr. Franks requested that the fee for the transcript be waived because he is indigent. The transcript is certified as being a correct transcript of the proceedings by the court clerk. We recognize that neither Mr. Franks, his counsel, nor a court reporter has certified the transcript as required by Tenn. R. App. P. 24(b). We assume that this transcript was prepared by the court clerk upon Mr. Franks request. Based upon the fact that the court clerk certified this transcript as correct, and because the State did not at any time file an objection to the transcript as required in Tenn. R. App. P. 24(b), this Court will proceed with our review and assume this is a valid representation of the proceeding below.

Mr. Franks introduced into evidence a 2007 letter from a doctor stating that he needed to make changes to the type of work he was currently employed in and that if he continues in that line of work, his knee problem will progress to a "disabling level."[2] According to Mr. Franks testimony, this doctor removed him from work at his previous employer and he received short term and long term disability benefits. He testified that his doctor would not release him to return to work and therefore his employer terminated his employment. Mr. Franks testified that due to his knee problem he cannot stand for longer than fifteen minutes, if he twists the knee wrong it will fall out from under him, and that he does not pick up his nineteen month old child for fear that he will drop the child. Mr. Franks testified that his home is two to three miles from the nearest place of employment, that being a farm. He testified that he cannot drive there because his driver's license has been suspended as a result of his arrearage on child support. He asserted that he paid some money to have the suspension released, but that it had not been released yet. Mr. Franks testified that he has looked for work that he is able to do. He testified that he went to school in 2007 for multimedia and game design, but was not able to finish because his driver's license was suspended. Mr. Franks testified that he had applied for disability, that he was denied in February 2009, and had not yet reapplied. He explained he had not reapplied because he forgot as a result of his psychological problems. He admitted that he did not have a letter from any physician stating that he was 100% disabled.

At the conclusion of the hearing, the Juvenile Court Investigator, who also acted as a bailiff, asked for Mr. Franks social security number and apparently contacted an unidentified source and informed the trial court that Mr. Franks' driver's license was listed as "unlicensed" and not as "suspended." The Investigator told the court that Mr. Franks' driver's license had been suspended for failure to pay child support, but had been reinstated, and Mr. Franks probably need only to re-take the driving test. The transcript does not indicate whom the Investigator contacted and no evidence was introduced to support this assertion.

Following the hearing, the trial court held Mr. Franks in contempt and ordered that Mr. Franks spend ten days in jail or pay a "cash purge" payment of $750.00. The trial court entered an order on October 19, 2009, reflecting this decision. In this order, the trial court also held that Mr. Franks owed $340.00 per month for child support, $45.00 of which was payment towards his arrears. This order does not indicate what the trial court found the total arrearage to be. However, the trial court entered an order on November 30, 2009 adopting the proposed findings of fact and conclusions of law which had been filed by the State on October 19, 2009. The State's proposed findings, as adopted by the trial court, state that the

_____

[2]This letter was introduced into evidence and appears in the record. The State did not object to the introduction of this letter into evidence. Accordingly, any objection is waived.

-3-

trial court found Mr. Franks to owe arrears in the amount of $8,147.05 as of July 31, 2009. The State's proposed findings also indicate that the trial court ordered Mr. Franks imprisoned for ten days with a cash bond of $750.00.

Mr. Franks timely filed a notice of appeal on November 17, 2009. The trial court appointed an attorney to represent him on appeal on October 19, 2009. Mr. Franks raises two issues for our review:

> 1. Whether there was insufficient evidence to support the court's finding that [Mr. Franks] willfully failed to pay his support payments?
>
> 2. Whether there was insufficient evidence that [Mr. Franks] had the present ability to pay at the time the contempt order was entered?

"An act of contempt is a willful or intentional act that offends the court and its administration of justice." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000)(citations omitted). To find contempt, the trial court must find the misbehavior, disobedience, resistance, or interference of the party to be willful. *Id.* at 79. "Willfulness" consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006). "A finding of willful conduct must precede a judgment from contempt, and a finding by a court that an act or omission was not willful must preclude a judgment of contempt." *Moore v. Moore,* No. M2004-00394-COA-R3-CV, 2007 WL 2456694, *3 (Tenn. Ct. App. August 29, 2007). A trial court may only find one in contempt "when the individual has the ability to comply with the order at the time of the contempt hearing." *Ahern,* 15 S.W.3d at 79.

Contempts may either be civil or criminal in nature. *Id.* at 78. In proceeding on a petition for contempt, the trial court shall first determine whether it is proceeding to determine criminal or civil contempt. *Cooner v. Cooner*, No. 01-A01-9701-CV-00021, 1997 WL 625277, at *6-7 (Tenn. Ct. App. November 14, 1997). This distinction is important as the trial court cannot proceed on both simultaneously and because of the differences that exist in the rights and protections afforded to defendants, and the differences in the burdens of proof. *Id.*

The purpose of criminal contempt is to vindicate the dignity and authority of the court. *Sullivan v. Sullivan*, 137 S.W.2d 306, 307 (Tenn. 1939); *see also* Pivnick, Tenn. Circuit Court Practice §3:19 (2010 ed). "Punishment for criminal contempt is both punitive and

unconditional in nature and serves to adjudicate 'an issue between the public and the accused.'"***Black v. Blount***, 938 S.W.2d 394, 398 (Tenn. 1996)(citations omitted). In a criminal contempt proceeding, the defendant is entitled to the same constitutional protections afforded to a defendant in a criminal trial. ***Storey v. Storey***, 835 S.W.2d 593, 599 (Tenn. Ct. App. 1992). Included within these protections is the presumption of innocence and the requirement that guilt be proven beyond a reasonable doubt. ***Brooks v. Brooks,*** No. M2007-00351-COA-R3-CV, 2009 WL 928283, at * 8 (Tenn. Ct. App. April 6, 2009)(citations omitted). Further, when a proceeding is for criminal contempt, the trial court must ensure that Rule 42 of the Tennessee Rules of Criminal Procedure is followed.

On the other hand, civil contempt is utilized "where a person refuses or fails to comply with an order of court in a civil case; and punishment is meted at the instance and for the benefit of a party litigant." ***Sullivan***, 137 S.W.2d at 307; see also Pivnick, Tenn. Circuit Court Practice §3:19 (2010 ed). As stated by our Supreme Court, [i]f imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order." ***Black v. Blount***, 938 S.W.2d 394, 398 (Tenn. 1996). In a civil contempt case, the contemnor "carries the keys to the prison in his own pocket...." ***Id.*** (citations omitted). Persons found to be in civil contempt, may purge themselves of contempt by complying with the court's order. ***Ahern***, 15 S.W. 3d at 78. Civil contempt, contrary to criminal contempt, only requires that the defendant be given notice of the allegation and an opportunity to respond. ***Flowers,*** 209 S.W.3d at 611. To find civil contempt in a case such as this, the petitioner must establish that the defendant has failed to comply with a court order. ***Chappell v. Chappell,*** 261 S.W.2d 824, 831 (Tenn. 1952). Once done, the burden then shifts to the defendant to prove inability to pay. ***Id.*** If the defendant makes a prima facie case of inability to pay, the burden will then shift to the petitioner to show that the respondent has the ability to pay. ***State ex rel. Moore v. Owens***, No. 89-170-11, 1990 WL 8624 (Tenn. Ct. App. February 7, 1990)(reversing a finding of contempt upon holding that respondent's testimony of inability to pay was unimpeached and uncontradicted by the petitioner); *see also* Garrett, Tenn. Practice Tenn. Divorce, Alimony & Child Custody §16-4 (2009). For the trial court to find that a failure to pay child support was contemptuous, the court must first determine that the parent had the present ability to pay and determine that the failure was wilful. ***Ahern v. Ahern***, 15 S.W.3d 73, 79 (Tenn. 2000). The ability to pay affects the willfulness of any failure to pay. The determination of whether the respondent violated the order of the court and whether the violation was willful are findings of fact. ***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.,*** 249 S.W.3d 346, 357 (Tenn. 2008).

It is essential for this Court to determine which type of contempt finding we are reviewing as it affects our standard of review. For example, once the trial court finds the defendant guilty of criminal contempt, the defendant loses his or her presumption of

innocence. ***Brooks v. Brooks,*** No. M2007- 00351-COA-R3-CV, 2009 WL 928283, at * 8 (Tenn. Ct. App. April 6, 2009)(citations omitted). " 'Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt.'" ***Moody v. Hutchison,*** 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004)(citations omitted); see also Tenn. R. App. P. 13(e).

Findings of civil contempt, on the other hand, are reviewed under an abuse of discretion standard. ***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.,*** 249 S.W.3d 346, 358 (Tenn. 2008). As stated by our Supreme Court:

> An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. ***State v. Lewis,*** 235 S.W.3d 136, 141 (Tenn. 2007). Discretionary decisions must take the applicable law and relevant facts into account. ***Ballard v. Herzke***, 924 S.W.2d 652, 661 (Tenn. 1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. ***Mercer v. Vanderbilt Univ.***, 134 S.W.3d 121, 131 (Tenn. 2004); ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn. 2003).

***Id.*** In reviewing the trial court's finding of civil contempt, we review its factual findings with a presumption of correctness unless the evidence preponderates otherwise pursuant to the standard contained in Tennessee Rule of Appellate Procedure 13(d). ***Id.*** at 357.

In determining whether a finding of contempt is a finding of criminal contempt or a finding of civil contempt, this Court is to focus on the character and the purpose of the sanctions imposed. ***McPherson v. McPherson***, No. M2003-02677-COA-R3-CV, 2005 WL 3479630, at * (Tenn. Ct. App. December 19, 2005). After reviewing the record, we are unable to determine whether the trial court found criminal or civil contempt. The trial court had before it two petitions for contempt, one which stated that it was petitioning the court for a finding of civil contempt, and another which did not specify either way. The trial court failed to indicate at the hearing or in any of its orders whether it was ruling on one or both of the pending petitions, and whether it was conducting a civil or criminal contempt proceeding. Moreover, the trial court's orders do not indicate whether its findings were by

a preponderance of the evidence, thus indicating it was finding civil contempt, or beyond a reasonable doubt, which would support a finding of criminal contempt. Further, we are unable to determine the type of contempt based upon the trial court's sentencing of Mr. Franks as the trial court combined aspects of criminal contempt- a determinate sentence- with aspects of civil contempt - a purge payment. However, our inability to determine which type of proceeding the trial court was conducting does not prohibit our review. After a thorough and careful review of the evidence, we find that record does not support a finding of civil contempt and therefore would also not support a finding of criminal contempt.

We have reviewed the trial court's findings of fact and find that evidence preponderates against its findings of fact. First, the trial court found that the State's payment records indicate that Mr. Franks last made a payment of $40.00 in April 2009 towards his child support obligation. However, the record does not reflect that the State's payment records were ever introduced into evidence and Mr. Franks testified he last made a payment of $30.00. No further evidence as to Mr. Franks' child support payments was introduced. Second, the trial court found that Mr. Franks failed to present "any current medical records or proof" that he was disabled. To the contrary, Mr Franks' uncontradicted testimony was that he was disabled and suffered from numerous health issues which affected his ability to work. Further, Mr. Franks presented a letter from his doctor indicating that he had a serious knee issue which prevented him from working in certain positions. Third, the trial court found that Mr. Franks had testified that he and his wife were current on all their bills and living expenses. However, the record clearly reflects that while Mr. Franks testified he was current on his cell phone and electric bill, Mr. Franks also testified that he was one-half month behind on his rent. No further evidence was introduced as to Mr. Franks' payment of living expenses. Fourth, the trial court found that Mr. Franks quit his job with Quebecor World in 2007 due to knee problem. However, Mr. Franks' uncontradicted testimony was that he was terminated from Quebecor World when his physician would not release him to return to work after he was on both short term and long term disability. Fifth, the trial court found that Mr. Franks quit school due to issues with financial aid. However, Mr. Franks testified that he had to quit school when his driver's license was revoked. No other evidence was presented on this issue. Finally, the trial court found that Mr. Franks had not been looking for work. While Mr. Franks testified that he had not applied for a job in three weeks, he also testified that he had applied for jobs, but had been unsuccessful in obtaining one which his health problems would permit him doing.[3] No other evidence was introduced as

---

[3]We also note that the trial court found that Mr. Franks "knowingly had two more children with his current wife knowing that he was not contributing to the financial support of his first child...involved in the present case." The trial court also made comments at the hearing to inform Mr. Franks that it "strongly frown[s]" on this occurrence. The birth of other children is not a defense to a petition to contempt based

(continued...)

to Mr. Franks' efforts to obtain employment.

Further, and particularly troubling to this court, the trial court appears to have considered statements made by a court officer during the proceeding as evidence against Mr. Franks.[4] In its findings of fact, the trial court states that "evidence presented during the hearing reflected the Child Support Office does not have a current hold on [Mr. Franks'] license." Indeed, the State in its brief contends that evidence was presented that the suspension on Mr. Franks' driver's license had been released and he was simply unlicensed and needed to only retake the driving test. However, this Court finds no evidence in the record regarding Mr. Franks' driver's license other than his testimony that it has been suspended based on his failure to pay child support, and a letter from the State informing him of the suspension. Towards the end of the trial, the Juvenile Court Investigator, acting as bailiff during the hearing, asked Mr. Franks for his social security number so that he could check on the status of his driver's license. The Investigator then contacted some source not identified in this transcript and determined that the suspension had been released and that he probably only needed to retake the driver's test. It would be plain error for the trial court to consider the statements made by the Investigator as evidence. There is no indication the investigator-bailiff was testifying as a sworn witness. In fact, both parties' briefs reflect that there was only one witness at this trial, Mr. Franks. Further, there is no indication whatsoever as to where the investigator-bailiff obtained his information; clearly making the statements inadmissible hearsay. Tenn. R. Evid. 801. The trial court's consideration of the court officer's statements as evidence and its finding of contempt based in part on the statements, are plain error. Based on the evidence actually presented at trial, which does not include statements or arguments made by court officers, this Court finds that the evidence preponderates against the trial court's finding that there is not a current hold on Mr. Franks' driver's license.

Mr. Franks testified at trial as to why he was unable to work. He explained that he was needed to care for his other two children, that he and his wife could not afford daycare,

---

[3](...continued)
upon an inability to pay, and it is the duty of the parent to petition the court to modify child support based upon the birth of additional children if necessary. *See* Tenn. Code. Ann. § 36-5-101(e)(4)(A). Every parent has the duty to support each and every one of his or her children. Tenn. Code Ann. §34-1-102. However, we have been furnished with no authority nor found any cases that would allow the trial court to consider the birth of a subsequent child as a factor for finding contempt.

[4]We recognize that this issue is not raised on appeal, however this Court may take notice of "plain errors affecting substantial rights although they were not brought to the attention of the court," Tenn. R. Evid. 103, and review the issue *sua sponte* in order to prevent prejudice to the judicial process. Tenn. R. App. P. 13(b).

that he was unable to obtain employment because his driver's license was suspended, and that his health issues prevented him from working. Mr. Franks testified that he was going to school in order to obtain skills which would help him become employed, but he was forced to quit when his driver's license was revoked.

Mr. Franks made a prima facia showing that he did not have the ability to pay. Accordingly, the burden shifted to the State to rebut his assertion. ***State ex rel. Moore v. Owens***, No. 89-170-11, 1990 WL 8624 (Tenn. Ct. App. February 7, 1990). The State chose not to take advantage of its opportunity at trial to present evidence to contradict Mr. Franks' testimony. Instead, it appears that the State chose to rely merely on the arguments made by its counsel and the statements by the investigator-bailiff. There is simply no evidence whatsoever in the record to support many of the trial court's findings of fact. The uncontradicted evidence shows the inability of Mr. Franks to pay his current child support obligation. Therefore, this Court concludes that the evidence preponderates against the trial court's findings of fact, including its finding that Mr. Franks has the present ability to pay his current child support obligation. Finding that the evidence preponderates against the trial court's findings of fact, this Court finds that the trial court abused its discretion in holding Mr. Franks in contempt. Consequently, we reverse the trial court's finding of contempt. Costs of this appeal are taxed to the Appellee, State of Tennessee, *ex rel.* Misty Murphy.

_____

J. STEVEN STAFFORD, JUDGE