IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 13, 2018

FILED
05/09/2018
Clerk of the
Appellate Courts

**STATE OF TENNESSEE v. MIGUEL GOMEZ**

**Appeal from the Criminal Court for Shelby County**
No. 13-06276          John Wheeler Campbell, Judge

_____

**No. W2017-01457-CCA-R3-CD**

_____

Defendant, Miguel Gomez, was convicted of three counts of aggravated assault. The trial court merged Counts Two and Three into Count One and sentenced Defendant to eleven years. On appeal, Defendant argues that the evidence at trial was insufficient to support his convictions and that his sentence was excessive. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Juni S. Ganguli (on appeal) and Blake Ballin (at trial), Memphis, Tennessee, for the appellant, Miguel Gomez.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Omar Malik, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Shelby County grand jury indicted Defendant for three counts of aggravated assault while acting in concert with two or more persons. Each count alleged a different theory of aggravated assault, Count One was based upon serious bodily injury to the victim, Count Two was based upon the use or display of a deadly weapon and bodily injury to the victim, and Count Three was based upon use or display of a deadly weapon and reasonable fear of imminent bodily injury by the victim. A trial commenced at which the following facts were adduced.

At around 6:00 p.m. on July 28, 2012, the victim, Aerol Cipriano, and Michelle Garza went to El Mercadito in Memphis, Tennessee. El Mercadito is an area similar to a mall. Ms. Garza testified that she and the victim went to El Mercadito with two of her friends. She did not know the last names of her two friends, but she stated that both of their first names were "Miguel." According to Ms. Garza, the purpose for their trip to El Mercadito was to meet two men on an unrelated matter. Neither man was present when Ms. Garza and the victim arrived at El Mercadito. After an hour of waiting at El Mercadito, Defendant, also known as "Stumper," unexpectedly arrived with some friends. Prior to this day, the victim had only seen Defendant one time. Defendant yelled at the victim about shooting at Defendant's house.

Ms. Garza's account of the subsequent events that day was unique. According to her, she and the victim were surrounded by sixteen people and "cornered" against a truck. Ms. Garza described the confrontation by saying, "He was just yelling at us . . . saying that we shot his house when we didn't." Defendant and fifteen other people kept Ms. Garza and the victim cornered against the truck until Defendant's friend arrived to identify the victim. After Defendant's friend identified the victim, everyone began to beat up the victim. Ms. Garza saw the attackers holding "two [brass] knuckles, a blade, and like a[n] ice pick and a screwdriver . . . and two guns." Defendant had one of the guns. When asked how many of the weapons were used against the victim, Ms. Garza replied, "All of them."

Ms. Garza tried to go to the other side of the truck to call the police. However, one of the men named "Miguel" that rode to El Mercadito with her kept her from doing so. Consequently, Ms. Garza "punched [the man named "Miguel"] three times" and hit Defendant in the back of the head with a wrench that she retrieved from her back pocket. In response to being struck, Defendant grabbed Ms. Garza and pulled her into the middle of the group. At that point, everyone began beating her. Later, Defendant began pulling Ms. Garza out of the mob of people. As he did so, Ms. Garza grabbed on to the victim, and he was pulled from the group too. Once pulled from the group, Ms. Garza saw Defendant hand a gun to his brother, "Redolfo" or "Little Stump," and tell him to "shoot that f***ing n*****." Somehow, Ms. Garza and the victim were able to escape the sixteen other people in the parking lot and escape to the interior of El Mercadito. A security guard called the police.

The victim recalled the events of that evening a bit differently. According to the victim, Ms. Garza stepped away to look for her phone, and around ten people, including Defendant, surrounded the victim. Once Defendant's cousin arrived and identified the victim, they began beating him. The victim said that he began running and heard Defendant say "shoot him, shoot him." The victim turned around and saw Defendant's

brother, "Little Stump," holding a gun. As the victim turned to run away, he fell. Defendant grabbed him, choked him, and brought him back to the crowd. At that point, everyone began beating him again. The victim claims he lost consciousness. Yet, somehow, Ms. Garza pulled him from the crowd and they ran inside El Mercadito. Once inside, a person called the police. Describing his injuries, the victim testified that he had a face fracture and a stab wound to his shoulder. Pictures of the victim and his injuries after the attack were shown to the jury.

The victim admitted that his recollection of the events was not that great because he lost consciousness. He could not recall the details about what items were used to attack him, but he recalled seeing Defendant and Defendant's brother standing in front of him and beside him. Though the statement by the victim to the police states that the attackers were armed with a gun, the statement did not specify that the gun was pointed at him. According to the victim, the police "didn't write it in." Additionally, the victim insisted that he did not shoot at Defendant's house and that he was not present when the shooting occurred. However, the victim did not remember if he told Officer Garrett that he had been present during the shooting. Officer Garrett testified that the victim told him that he was present during the shooting at Defendant's house but that he was not the one who pulled the trigger.

Ms. Garza filed a report with the police. The police documented the victim's injuries. After talking with the police, Ms. Garza and the victim went home. The next day, the victim was treated at the hospital for his injuries.

At a later date, Ms. Garza and the victim went to the police station and identified Defendant in a photographic lineup. Ms. Garza told the police that Defendant had the gun and "one of the [brass] knuckles." Officer Kenneth Adams of the Memphis Police Department ("MPD") General Investigation Bureau took the statements and conducted the photographic lineups in this case. Officer Adams maintained that the victim and Ms. Garza were kept separate while giving their statements and during the photographic lineups. Officer Adams also stated that the handwriting on the victim's photographic identification was solely the victim's. However, Ms. Garza revealed that she had written on the victim's photo identification sheet. Additionally, Ms. Garza said that she looked up on Facebook the other individuals who participated in the attack, but ultimately, only gave four names out of sixteen to the police.

Lieutenant Andre Pruitt of the Memphis Police Department was the lead investigator in this case. He conducted the interrogation of Defendant, and after signing a waiver of rights, the only thing that Defendant said was that "it would take three to convict him." After the interrogation, Defendant was placed in a different room where he

punched a hole in the wall. After gathering information, Lieutenant Pruitt decided to charge Defendant.

Kevin Gomez, Defendant's brother also known as "Little Stump" or "Little Stumper," admitted to committing the assault against the victim. He said that he carried out the crime by himself and that his cousin was present but did not participate. He stated that he committed the assault using his fists without any weapons. He also testified that Defendant was not present at El Mercadito at the time of the attack. Mr. Gomez also stated that he was the individual who punched the hole in the wall at the police station and that he was charged and prosecuted for vandalism as a result.

After deliberation, the jury found Defendant guilty as charged of all three counts of aggravated assault. During a sentencing hearing, the trial court noted its consideration of the facts at trial, the criminal behavior of Defendant, and the pre-sentence report. The trial court found Defendant to be a Range I offender. The trial court found that three enhancement factors applied. First, the trial court found that Petitioner had a criminal history in excess of that needed to establish the appropriate range. *See* T.C.A. § 40-35-114(1). Additionally, the trial court found that Defendant was a leader in the commission of the offense based on the testimony that Defendant was part of the group that attacked the victim. *See* T.C.A. § 40-35-114(2). Finally, the trial court found that Defendant committed a delinquent act as a juvenile that would constitute a felony if convicted as an adult. *See* T.C.A. § 40-35-114(16). The trial court applied no mitigating factors. The trial court merged Counts Two and Three into Count One and sentenced Defendant to eleven years.

Defendant filed a timely motion for new trial raising the issues on this appeal amongst other issues. The trial court denied the motion after a hearing, and this appeal followed.

*Analysis*

Defendant argues that the evidence is insufficient to support his convictions because "[o]nly flawed and inconsistent testimony linked [Defendant] to the crime." Additionally, Defendant argues that his sentence is excessive. The State disagrees. We agree with the State.

*I. Sufficiency of the Evidence*

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn.

1992).  The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt.  *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003).  As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof.  *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).  "In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence."  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (citing *Duchac v.State*, 505 S.W.2d 237, 241 (Tenn. 1973)).  Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence."  *Matthews*, 805 S.W.2d at 779.  Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts.  *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'"  *Dorantes*, 331 S.W.3d at 379 (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

For the purposes of this case, an aggravated assault occurs when a person intentionally or knowingly commits an assault as defined in T.C.A. § 39-13-101, and the assault results in serious bodily injury to another or involved the use or display of a deadly weapon.  T.C.A. § 39-13-102(a)(1)(A)(i),(iii).  A person commits assault by "[i]ntentionally, knowingly or recklessly [causing] bodily injury to another" or "[i]ntentionally or knowingly [causing] another to reasonably fear imminent bodily injury."  Aggravated assault is a Class C felony, but it is a Class B felony when committed while acting in concert with two or more other persons.  T.C.A. § 39-13-102(e)(1)(A)(ii); T.C.A. § 39 -12-302(a).

Defendant points to evidence used to impeach the State's witnesses as proof that the evidence was insufficient to support his convictions.  Assessing the quality of witness testimony is not within our purview.  *See Pruett*, 788 S.W.2d at 561.  So, we will evaluate the evidence presented at trial with the jury's accreditation of the State's witnesses in mind.  *See State v. Manning*, 909 S.W.2d 11, 12 (Tenn. Crim. App. 1995) ("A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state.").  Viewing the testimony presented at trial in a light most favorable to the State, the evidence pertaining to Count One showed that Defendant, while acting in concert with at least ten other individuals, intentionally or knowingly

caused serious bodily injury to the victim by beating him severely with brass knuckles until the victim suffered facial fractures and temporarily lost consciousness. With regard to Count Two, Ms. Garza testified that Defendant had a gun, and when asked what weapons were used to attack the victim, she replied "all of them." From this a rational juror could find Defendant knowingly used or displayed a deadly weapon and caused bodily injury to the victim while acting in concert with at least ten other individuals. In Count Three, the evidence showed that Defendant, while acting in concert with at least ten other individuals, handed a gun to his brother and told him to shoot the victim. A rational juror could find that action involved the use or display of a firearm and caused a reasonable fear of imminent bodily injury in the victim. Thus, a rational juror could find beyond a reasonable doubt that Defendant was guilty of all three counts of aggravated assault.

## *II. Sentencing*

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). Appellate courts may not disturb the sentence even if we had preferred a different result. *See id.* at 346

Defendant contends that the trial court did not make the proper considerations before imposing his sentence. However, the trial court considered the facts presented at trial, the criminal behavior of the defendant, and the pre-sentence report. In so doing, it is obvious that the trial court would have considered the nature and characteristics of the criminal conduct. Further, the trial court referred to the sentencing principles and listened to the argument of both parties on the applicable enhancement and mitigating factors. The record does not indicate that any statistical information was provided to the trial court by the administrative office of the courts. Additionally, the trial court considered Defendant's potential for rehabilitation or treatment when it referenced Defendant's "tough time" growing up and Defendant's "mental health issues." Included in the record are the trial court's written findings of fact as to sentencing. It is clear that the trial court considered all of the available information pertaining to the aforementioned factors.

Additionally, Defendant argues that the trial court erred in weighing the enhancement and mitigation factors. The trial court found that three enhancement factors applied and no mitigating factors applied in this case. The trial court merged Counts Two and Three into Count One and sentenced Defendant to eleven years as a Range I offender. The sentence is within the appropriate range and presumed reasonable. *See* T.C.A. § 40-35-112(a)(2) (listing sentencing range of "not less than eight (8) nor more than twelve (12) years" for a Class B felony). We will not reweigh enhancement and mitigating factors, and we discern no abuse of discretion by the trial court.

*Conclusion*

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE