## IN THE COURT OF APPEALS OF TENNESSEE
### WESTERN SECTION AT JACKSON

STATE OF TENNESSEE, ex rel.            )
MARY KATHERINE DUCK,                   )
                                       )
      Respondent/Appellee,         )        Madison Juvenile No. 18-0155
                                       )
vs.                                    )
                                       )        Appeal No. 02A01-9604-JV-00084
JOE DAVID WILLIAMS                     )
                                       )
      Petitioner/Appellant.        )

**FILED**

**October 29, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

APPEAL FROM THE JUVENILE COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE

THE HONORABLE WALTER BAKER HARRIS, JUDGE

For the Respondent/Appellee:

Jennifer Helton Small
Deputy Attorney General
Nashville, Tennessee

Nathan B. Pride
Assistant Attorney General
Jackson, Tennessee

For the Petitioner/Appellant:

Charles A. Spitzer
Jackson, Tennesseee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a paternity case. The appellant putative father appeals from an order of the Juvenile Court denying his motion for a DNA blood test. We affirm the trial court's decision.

Danielle Renee Duck was born out-of-wedlock on April 16, 1989 to the appellee, Mary Katherine Duck ("Duck"). Duck and the appellant putative father, Joe David Williams ("Williams") never married. The minor child has remained in the custody of her mother.

Shortly after the child's birth, the Attorney General filed a petition to establish paternity in the Madison County Juvenile Court, alleging that Williams was the natural father. The following day, Williams agreed to a consent order of paternity and support ("Consent Order") regarding the child. The Consent Order stated that both Williams and Duck had been fully advised of their rights and that Williams acknowledged his obligation to support the child. The Consent Order required that Williams pay $50.00 per month for Danielle's support.

In December 1990, the Attorney General filed a petition to modify the Consent Order by increasing the monthly child support. Shortly thereafter the Madison County Juvenile Court entered an order increasing the monthly child support to $137.00 per month. The modified order also directed Williams to provide health insurance or, in the alternative, pay one-half of any medical costs incurred by the child.

Nearly five years later, in November 1995, the Attorney General filed another petition seeking a further increase in the monthly child support. In response, Williams filed a motion for DNA blood testing, alleging that he had always believed that the child may not have been his child. Williams also asserted that Duck informed him that she had engaged in sexual relations with another party during the time frame in which the child was conceived. Williams asserted that the original Consent Order establishing paternity to which he agreed in 1989 was signed under duress and pressure, and stated that he had no relationship with the child.

Duck's response to Williams' motion for blood testing argued that the sole reason for his motion was to retaliate for her attempt to increase the child support amount. Duck denied telling Williams that he was not the father of the child, and asserted that she had not engaged in sexual relations with anyone other than Williams during the time period in which the child was conceived. Duck asserted that Williams had spent significant time with Danielle in the past and that his recent absence caused Danielle emotional stress.

The Juvenile Court of Madison County held a hearing on Williams' motion for blood testing, and subsequently entered an order denying the motion, citing the amount of time that had passed since the Consent Order establishing paternity, and noting that Williams had made no allegation of fraud. Williams now appeals the denial of his motion for blood testing.

On appeal, Williams alleges that the trial court erred in denying his motion for blood testing. He argues that the entry of the Consent Order was not an "initial appearance" within the meaning of the statutes, because he did not dispute paternity. He asserts further that the statutes do not require an allegation of fraud in order to obtain a blood test, and that the statutes do not require the putative father to seek a blood test in his "initial appearance."

Our review in this case is *de novo* on the record of the trial court, with a presumption of the correctness of its factual findings, unless the evidence preponderates against those findings. Rule 13(d), Tenn. R. App. P. No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Tennessee Code Annotated § 24-7-112 governs the right of a party to demand DNA blood testing. Subsections (a)(1) and (a)(2) both address the conditions under which such a test may be ordered:

> **Test to Determine percentage--Admissibility in Evidence--Costs--**(a)(1) In the trial of any civil or criminal proceeding in which the question of parentage arises, the court before whom the matter may be brought, upon the motion of either party *at the initial appearance*, shall order that all necessary parties submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage. Tests for determining paternity may include any blood, genetic, or DNA test utilized by an accredited laboratory. Failure to make a timely motion for submission to such tests and comparisons shall constitute a waiver and shall not be grounds for a continuance. The results of such tests and comparisons, including the statistical likelihood of the alleged parent's parentage, if available, may be admitted into evidence as provided in subsection (b).
> (2) During any civil proceeding in which the question of parentage arises, upon the motion of either party or on the court's own motion, the court shall, *at such time as it deems equitable*, order all necessary parties to submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage. . . . (Emphasis added).

Subsection (a)(2) of this statute was added in 1991. The apparent inconsistency between subsections (a)(1) and (a)(2) has been previously noted by this Court. *See Davis v. Davis*, No. 03A01-9509-CH-00327, 1996 WL 12584 (Tenn. App. 1996). The issue was also discussed in *O'Brien v. Bainbridge*,

2

No. 01A01-9404-PB-00175, 1994 WL 590035 (Tenn. App. 1994):

> Facially, subsections (a)(1) and (a)(2) are inconsistent in that (a)(1) requires motions for blood tests to be filed "at the initial appearance" and provides that failure to timely file the motion constitutes a waiver thereof; whereas (a)(2) states that 'During a civil proceeding . . . upon motion of either party or on the court's own motion, the Court *shall, at such time as it deems equitable*, order (blood tests).

*Id.* at *2. In *Davis v. Davis*, this Court reconciled these two provisions:

> Construing these provisions **in para materia**, we conclude that (a)(1) requires that the Judge order testing if one of the parties raises the issue in the initial pleading if the issue is raised later, (a)(2) grants the Trial Judge discretion in deciding whether the testing should take place.

*Davis*, 1996 WL 12584, at *2. Therefore, if Williams had sought a blood test in his initial pleading, such a test would be required. Since Williams raised the issue later, the trial court had the discretion to decide whether the test should be ordered.

Williams claims that he is entitled to a blood test as a matter of right under the provisions of Tennessee Code Annotated § 24-7-112(a)(1) because the juvenile court proceeding in 1989, in which Williams signed a Consent Order of Paternity and Child Support, did not constitute an "initial appearance" on the issue of paternity. In support of his argument, Williams cites *Williams v. Campbell*, No. 02A01-9408-JV-00177, 1995 WL 429265 (Tenn. App. 1995). In *Williams*, this Court discussed what constitutes an "initial appearance." The parties in *Williams* were married at the time of the child's birth. They divorced shortly thereafter and the mother retained custody of the child. An order of child support was entered by the Juvenile Court. The issue of paternity was not raised at this point.

Four years later the father filed a petition to set aside the child support order on the basis of newly discovered evidence which brought into question his paternity. The father testified that he had always believed the child to be his. However, following a heated argument regarding the child's visitation schedule, the mother and her family members informed him that he was not the father. This argument took place nearly three years after the child support order was entered. Shortly after the argument, the father filed a petition requesting that the juvenile court set aside the child support order on the basis of newly discovered evidence, and further requesting that the juvenile court order a blood test to determine paternity. The trial court refused to set aside the child support order and refused to order the parties to submit to a blood test. The father then appealed to this Court.

On appeal, this Court noted that the issue of paternity had not previously been considered.

3

It concluded that the father's petition requesting a blood test constituted an initial appearance under Tennessee Code Annotated § 24-7-112, thereby requiring that the trial court enter an order for a blood test to determine paternity:

> In the present case, the conditions activating the application of T.C.A. §24-7-112 have been met. This is clearly a civil proceeding involving the question of parentage in which the appellant moved in the initial appearance before the juvenile court for an order requiring the parties to submit to a paternity test. Although it can be argued, based on the holding in *Steioff v. Steioff*, 833 S.W.2d 94 (Tenn.App.1992), that the parties' appearance before the juvenile court on the issue of child support was the initial appearance, we find the present action to be the first action between the parties concerning the paternity of [the child]. . . . In the present case, the parties did not raise the issue of paternity at any time during the action seeking child support. In fact, the paternity of [the child] was not an issue until the present action was filed because at the time of the child support order the parties were married and [father] assumed he was the father of the child.

*Williams*, 1995 WL 429265, at *2. In the case at bar, Williams argues that in this case, as in *Williams v. Campbell*, there was no denial of paternity at the outset. However, the initial proceeding between Williams and Duck was a petition to establish paternity filed by the Attorney General. Since Williams and Duck were never married, before an order of child support could be rendered, a paternity determination was required. It is undisputed that Williams failed to request a blood test at the time of the initial paternity proceeding. Accordingly, we find that Williams' petition seeking a blood test was not an "initial appearance" within the meaning of Tennessee Code Annotated § 24-7-112(a)(1).

Therefore, Williams' petition for a blood test must be considered pursuant to subsection (a)(2) of Tennessee Code Annotated § 24-7-112, which grants the trial court the discretion to determine whether to grant a request for a blood test filed after the initial appearance. The standard of review on appeal on this issue is whether the trial court abused its discretion in denying the motion. An appellate court "will not reverse a discretionary judgment of the trial court unless it affirmatively appears that such discretion has been explicitly abused to great injustice and injury of the party complaining." *Douglas v. Estate of Robertson*, 876 S.W.2d 95, 97 (Tenn. 1994). *See also Ballard v. Herzke*, 924 S.W.2d 652 (Tenn. 1996).

In this case, following the hearing, the trial court issued an oral ruling:

> [A]s long as you pay support for a child, looks like, [. . .] it is the judgment of the Court that this petition is denied, and the Court feels that too much time has gone by and that no allegation of fraud [exists] and so the Court does deny the Motion.

Williams argues that the trial court erred in basing its decision on Williams' failure to allege fraud.

4

However, while the trial court noted the absence of an allegation of fraud, it also relied on the undisputed lengthy period of time that had passed since the entry of the Consent Order establishing paternity. In his petition, Williams asserted that Duck informed him that she had engaged in sexual relations with a third party during the time period in which the child was conceived. However, Williams failed to establish in the record when this alleged conversation with Duck took place. In addition, it is undisputed that Williams' petition was filed shortly after Duck filed a petition seeking an increase in child support. Under all of these circumstances, we cannot conclude that the trial court abused its discretion in denying Williams' petition for blood testing.

The decision of the trial court is affirmed. Costs on appeal are taxed to the Appellant, for which execution may issue if necessary.


                                 **HOLLY KIRBY LILLARD, J.**

**CONCUR:**


**W. FRANK CRAWFORD, P. J., W.S.**


**DAVID R. FARMER, J.**