IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville October 30, 2018

**STATE OF TENNESSEE v. DELMONTAE GODWIN**

**Appeal from the Circuit Court for Madison County**
**No. 17-162   Donald H. Allen, Judge**

_____

**No. W2017-02400-CCA-R3-CD**

_____

Defendant, Delmontae Godwin, was convicted of aggravated assault and aggravated robbery and sentenced to an effective sentence of twelve years, to be served consecutively to a sentence from another conviction. Defendant appeals his sentence, arguing that the trial court erred by sentencing him to the maximum sentence for each conviction. Because the trial court did not abuse its discretion, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

George Morton Googe, District Public Defender, and Gregory Gookin, Assistant Public Defender, for the appellant, Delmontae Godwin.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; James G. Woodall, District Attorney General; and Shaun Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In December of 2016, Jordan Murphy, the victim, attempted to sell two guns, an AR-15 and a Glock 31, through a Facebook buy/sell/trade group. The victim was contacted by a man interested in purchasing the guns. This person identified himself as "Steven Godwin." The parties agreed to meet at K-Mart in Jackson, Tennessee, to complete the transaction. After the victim arrived at K-Mart, Steven called him and

asked him to meet on Greenfield Street so that Steven's older brother could buy the guns from the victim.

The victim drove to Greenfield Street where he tried to call the buyer. While he was turning his car around on the dead-end street, he was approached by Defendant and another young man. They asked the victim his name and told him they would go get the buyer. Defendant and the other man walked to a nearby apartment complex. When they returned, "maybe two minutes" later, the young man with Defendant tried to give the victim some money for the guns. The victim told the men that he was there to "deal with the brother that [he] was supposed to meet." At that point, according to the victim, Defendant pulled out a firearm, grabbed the AR-15 and Glock from the victim, and told the victim he "wasn't leaving with these firearms." The victim was able to reach for the gun he was carrying on his right hip and fired several times at Defendant. Defendant returned fire. Defendant "shot once" at the victim before the victim "shot approximately three or four times" at Defendant and the other young man. All three of the men were "running," and Defendant "kept shooting continuously" at the victim. The victim was able to fire "two or three more rounds" while he made his way to the back of his truck. Defendant and the other young man ran away, and the guns were dropped on the street in the process. The victim got back into his truck and drove down the street before stopping at a nearby house to use a telephone to call the police. Police found the Glock pistol and AR-15 rifle near the location where the shooting took place and identified a total of eight cartridge casings − four from a nine-millimeter weapon and a four from a forty caliber weapon.

Police learned that Defendant was being treated at Humboldt General Hospital for gunshot wounds. Sergeant Kevin Hill of the Humboldt Police Department interviewed Defendant, who claimed that he was shot "between two houses" at an unspecified location. Sergeant Hill could not verify any reports of shots fired in the area. As a result of his investigation, Sergeant Hill learned that the nearby Jackson Police Department had a report of an incident involving gunfire. Defendant maintained that he was shot in Humboldt and sought treatment at the hospital in Humboldt for that reason. However, the victim was able to identify Defendant in a photographic lineup after the incident. Police obtained some of Defendant's clothing from his mother. The clothing appeared to have bullet holes in it and blood on it.

In April of 2017, Defendant was indicted for attempted second degree murder, aggravated assault, aggravated robbery, and employing a deadly weapon during the commission of a dangerous felony. After hearing the evidence at trial, the jury found Defendant not guilty of attempted second degree murder and employing a deadly weapon during the commission of a dangerous felony. The jury found Defendant guilty of the remaining charges, aggravated assault and aggravated robbery.

The trial court made extensive findings of fact at the sentencing hearing. The trial court noted that sentencing alternatives were not available because Defendant's conviction for aggravated robbery was a "non-probatable, non-parole offense." The trial court commented on the "serious" nature of the crimes and the fact that the victim was "specifically targeted" by Defendant in order to rob him of two firearms. The trial court applied enhancement factor (1) based on Defendant's prior offense of theft of property over $1000. *See* T.C.A. § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"). The trial court noted that Defendant was originally placed on judicial diversion for that offense but committed the aggravated assault and aggravated robbery "while he was on supervision for that theft over 1,000" and, as a result, was removed from judicial diversion. Defendant had "other prior criminal behavior" in the form of his admitted use of marijuana on a daily basis. The trial court noted that Defendant had juvenile misdemeanor adjudications but chose not to give weight to those juvenile adjudications. However, the court commented on the fact that those adjudications indicated that Defendant had "been in trouble with the juvenile court previously." The trial court also applied enhancement factor (2) because of Defendant's role as a leader in the commission of the crime and enhancement factor (8) because of Defendant's failure to complete judicial diversion. *See* T.C.A. § 40-35-114(2), (8). Additionally, the trial court applied enhancement factor (13) because of Defendant's status on judicial diversion at the time of the commission of the offense. *See* T.C.A. § 40-35-114(13).

In mitigation, the trial court considered Defendant's young age of eighteen but gave that mitigation factor "slight weight." *See* T.C.A. § 40-35-113(6) ("The defendant, because of youth or old age, lacked substantial judgment in committing the offense"). The trial court commented on Defendant's truancy violations and "numerous problems at school," including Defendant's expulsion for an altercation with another student and resulting transfer to the "alternative school due to the zero tolerance policy."

With respect to the aggravated assault conviction, the trial court determined that Defendant was a Range I, standard offender, noting that the range of punishment for aggravated assault was three to six years. With respect to the aggravated robbery conviction, the trial court observed that the sentence carried a release eligibility of 85% and that the range of punishment was eight to twelve years. The trial court sentenced Defendant to the maximum sentence of twelve years for the aggravated robbery conviction, to be served at 85%. On the aggravated assault conviction, the trial court ordered Defendant to serve a six-year sentence as a Range I, standard offender. The trial court ordered the two sentences to run concurrently with each other but consecutively to the four-year sentence for the prior theft conviction based on Defendant's commission of

the offenses while he was on judicial diversion. The trial court ordered Defendant to pay the fines as imposed by the jury and restitution to the victim in the amount of $900.

Defendant filed a timely motion for new trial. At the hearing on the motion, the trial court decided to "stand on what . . . [was] said at the sentencing hearing." Defendant appealed to this Court.

*Analysis*

On appeal, Defendant complains about the length of his sentence, noting that he is a "very young man" and the trial court imposed a lengthy sentence. The State contends that the trial court did not abuse its discretion in sentencing Defendant.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The misapplication of an enhancement or mitigating factor by the trial court "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

At the sentencing hearing, after reviewing the proof and the sentencing act, the trial court applied enhancement factors (1), (2), (8), and (13). The trial court considered Defendant's age as a mitigating factor. Defendant faced a sentence of eight to twelve years for the Class B felony of aggravated robbery. *See* T.C.A. §§ 39-13-402; 40-35-112(a)(2). As a Range I, standard offender, Defendant was subject to a sentence of three to six years for the Class C felony of aggravated assault. *See* T.C.A. §§ 39-13-402; 40-35-112(a)(3). After making lengthy findings, the trial court sentenced Defendant to an effective sentence of twelve years.

Because Defendant was sentenced to a within-range sentence, the trial court's decision is entitled to a presumption of correctness. *Bise*, 380 S.W.3d at 709-10. The record before this Court shows that the trial court thoroughly and completely applied the statutory sentencing principles. The evidence in the record supports the trial court's application of the enhancement and mitigating factors. The trial court did not abuse its discretion.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE