IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 9, 2022

**STATE OF TENNESSEE v. JAMES BERG**

**Appeal from the Circuit Court for Lawrence County
No. 36420, 36421, 36423   David L. Allen, Judge**

_____

**No. M2022-00233-CCA-R3-CD**

_____

Pursuant to a plea agreement, the Defendant, James Berg, entered guilty pleas to aggravated sexual battery and two counts of rape of a child.  The Defendant agreed to a concurrent term of twenty-five years for the rape of a child convictions and a term of fifteen years for the aggravated sexual battery conviction, with the alignment of these terms of imprisonment to be determined by the trial court.  Following a sentencing hearing, the trial court ordered the terms to be served consecutively, for an effective sentence of forty years' imprisonment.  The sole issue presented on appeal is whether the trial court abused its discretion in ordering consecutive sentencing.  Upon our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and TOM GREENHOLTZ, JJ., joined.

Brandon Elijah White (on appeal) and John Colley, III (at trial), Columbia, Tennessee, for the Defendant-Appellant, James Berg.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Gary M. Howell, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On July 23, 2021, the Defendant entered a guilty plea in case numbers 36420 and case number 36421, to rape of a child.  The plea agreement provided for a concurrent term of twenty-five years' imprisonment for each rape of a child conviction to be served at 100%. In case number 36423, the Defendant also entered a guilty plea to count three, aggravated sexual battery, and received a sentence of fifteen years' imprisonment to be

served at 100%. The plea agreement reserved alignment of these terms to the discretion of the trial court. The factual basis supporting the guilty plea was as follows:

Judge, star[t]ing first with cases 36420, count 1, and 36423, those two matters the State had moved to consolidate for trial, so I'll take those matters jointly.

On a date somewhere on or about [July 1, 2020, to August 15, 2020], here in Lawrence County, Tennessee, this Defendant was in an automobile with two children. One is KGH, whose date of birth is [** **, 2010]. So[,] she would have been between nine and ten at the time. The other would be MJS, a female minor child, whose date of birth is [** **, 2018]. So, she would have been two and a half at the time.

The State's proof, we would expect our proof to show that on that date they were in a vehicle with the Defendant. The Defendant parked the vehicle at a spot here in Lawrence County, Tennessee, and at some point[,] was in the back of this SUV type vehicle with the children.

During the time that he was back there, as far as the child KGH, he did contact her vagina with his fingers and penetrating the vagina.

And as far as the child MJS, he did have contact with that child by his penis in her mouth.

Then, as to case number 36421, count 1, that involves a female minor child whose initials are PMS and whose date of birth is [** **, 2016]. So, at this time, she would have been four years old.

Again, during the time period between [July 1, 2020], and [August 15, 2020], this Defendant, again, was in a motor vehicle with PMS and during that time penetrated her vagina with his fingers.

All of this was done unlawfully without any sort of effective consent.

The guilty plea paperwork, which included the waiver of trial by jury and petition to enter plea of guilty signed by the Defendant, was marked and admitted as an exhibit to the hearing.

On January 21, 2022, a sentencing hearing was held to determine the alignment of the twenty-five-year concurrent term for the rape of a child convictions with the fifteen-

year term for the aggravated sexual battery. The presentence report, admitted into evidence without objection, provided a detailed description of each of the offenses. It also showed that the Defendant had a criminal history including misdemeanor theft, two prior convictions of DUI, and two violations of probation. The Strong-R assessment evaluated the Defendant as a "high risk for employment, family, and attitudes/behavior; a moderate risk for education, alcohol/drug use, residential, and aggression."

Jeff Dunn, an investigator with the Twenty-Second Judicial District Attorney's Office, testified that he handled the instant case because it involved multiple victims. He witnessed the forensic interviews of the minor child victims and spoke with their parents. He said there were three forensic interviews and that each interview followed the proper procedure. Investigator Dunn said that the Defendant initially refused to provide a statement regarding the offenses; however, he eventually gave a detailed statement confessing to the unlawful conduct with each of the minor child victims. Although the Defendant was not the biological father of any of the minor child victims, he acted as a father figure to them. There were two instances of misconduct involving four-year-old PMS. The Defendant said he was PMS's mother's boyfriend and lived in the same house. The Defendant said that PMS "walked up" on him at the creek while he was watching pornography and masturbating. The Defendant said that he rubbed PMS outside her clothes. The second instance involving PMS was at home while everyone was asleep. The Defendant said he was again watching pornography and he "touch[ed] inside [PMS's] panties" until he ejaculated. Regarding ten-year-old KGH, while parked in a car, the Defendant gave her his cellular phone with his "porn stash." KGH began to watch it and said it was "nasty and gross." In an effort to convince her that it was not, the Defendant attempted to "rub her" but KGH "wasn't going for it at all." Another instance of unlawful sexual misconduct was disclosed during the forensic interview of KGH, who explained that the Defendant forced another minor child victim, two-year-old MJS, to "lick" the Defendant's penis, meaning that the Defendant put his penis inside the mouth of two-year-old MJS.

Investigator Dunn testified the Defendant could not give a specific date for the offenses but agreed that it occurred within two months of the interview with Investigator Dunn or on or about August 20. The Defendant described his extensive drug use during each instance of sexual misconduct with the minor child victims. Investigator Dunn agreed that based on the Defendant's statement the Defendant committed the instant offense for sexual gratification. In a second interview with Investigator Dunn, the Defendant stated, "I only need to know if I become this monster when I'm asleep or I've done too many f------ drugs." The Defendant went on to explain that he had a problem with methamphetamine, and he used it daily. On cross-examination, Investigator Dunn confirmed that the Defendant's drug use coincided with the history of sexual misconduct with the minor victims.

The mother of KGH (Mother One) testified that she first learned of the sexual misconduct from her niece. Mother One said that KGH was reluctant to tell her about the sexual misconduct because the Defendant told KGH that her mother would go to jail if KGH told anyone about the offense. KGH was scared to lose her mother because her father had passed away and her mother was the only parent KGH had. Mother One had a written statement detailing how the sexual offenses impacted KGH, which she read to the court at the hearing. Based on this statement, KGH was unable to trust men including family members, she experienced horrible urinary tract infections and constipation, she had to miss several days of school, she experienced frequent nightmares, she was undergoing counseling and struggling with school. Mother One said she too has experienced anxiety and was unable to work because she no longer trusted anyone to keep her children.

The mother of PMS and MJS (Mother Two) testified that at the time of the offenses her children were four and two years of age. Mother Two said the Defendant was her fiancé at the time of the offense. Mother Two had known the Defendant for over fifteen years, and they had been living together for a year and a half. Mother Two said her children considered the Defendant as a father figure. Her daughters called the Defendant "Pink Daddy" and her son called him "Blue Daddy." Mother Two was told about the sexual misconduct by Mother One. At the time of the offenses, MJS experienced "really bad" urinary tract infections, and she was potty trained. Mother Two said she only recently was able to completely potty train MJS and that MJS "still has trouble peeing at night." Mother Two said PMS "completely shut down. She's not herself, at all anymore." Mother Two described PMS as shy and withdrawn from men. PMS was in therapy three days a week at school, and the school recommended "hold[ing] her back" because PMS was unable to properly socialize. Mother Two said her son was also impacted by the offenses and that he was in therapy because "every time he stepped foot in the house, he said he felt like he needed to kill someone." Son suffered from nightmares and "anger issues" because of what happened to his sisters in this case. Mother Two asked the court to impose consecutive sentencing.

Following closing argument of counsel, the trial court ordered consecutive sentencing based on Tennessee Code Annotated section 40-35-115(b)(5). The trial court stated that it was "undisputed" that the Defendant had been convicted of two or more offenses involving the sexual abuse of a minor. The trial court also found other aggravating factors which supported application of section (b)(5) including the Defendant's status as a father figure to the victims; the seven to eight weeks that the sexual misconduct went undetected; the fact that the Defendant categorized himself as "a monster" that needed to be "tamed"; and the extensive residual physical and mental damage to the minor victims. The trial court then ordered the fifteen-year sentence for the aggravated sexual battery

- 4 -

conviction to be served consecutively to the twenty-five-year concurrent term for the two rape of a child convictions, for an effective sentence of forty years' imprisonment.

The judgments for the rape of a child convictions were entered on July 23, 2021, with the same court clerk stamp filed date. The judgment for the aggravated sexual battery conviction also reflects a typed entry date of July 23, 2021. However, the stamp filed date shows the aggravated sexual battery conviction was not entered until January 21, 2022, the same day as the sentencing hearing. The Defendant filed his notice of appeal on February 22, 2022. Based on these dates, the State argues the Defendant's notice of appeal was beyond the thirty-day statutory deadline, and this case should be dismissed as untimely. See Tenn. R. App. P. 4(a). In his reply brief, the Defendant asserts the notice of appeal is timely because the judgments, collectively, were not final until the trial court determined the alignment of the aggravated sexual battery. He insists the case did not become ripe for appellate review until after the January 21, 2022 sentencing hearing, which aligned the aggravated sexual battery conviction consecutively to the rape of a child convictions. We agree with the Defendant and conclude the notice of appeal was timely filed, as the only issue to be determined on appeal is the alignment of the aggravated sexual battery conviction. To the extent that the notice of appeal may be considered untimely from the January 21, 2022 date, we additionally note the record reflects the notice was sent via certified mail within the time period for filing and therefore timely pursuant to Rule 20(a) of the Tennessee Rules of Appellate Procedure. Accordingly, this case is now properly before the court for review.

## ANALYSIS

The Defendant argues the trial court abused its discretion in imposing consecutive sentencing. The State disagrees. When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012); State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997) (citing Ballard v. Herzke, 924 S.W.2d 652, 661 (Tenn. 1996)). If a trial court finds by a preponderance of the evidence that a defendant fits into at least one of the seven categories in Tennessee Code Annotated section 40-35-115(b), it may order multiple offenses to be served consecutively. Tenn. Code Ann. § 40-35-115(b). This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." State v. Pollard, 432 S.W.3d 851, 861 (Tenn. 2013). As relevant here, Tennessee Code Annotated section 40-35-115(b)

provides that a trial court may, in its discretion, order sentences to run consecutively if it finds by a preponderance of the evidence that:

> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

Tenn. Code Ann. §40-35-115(b)(5). The imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2) & (4); State v. Nance, 393 S.W.3d 212, 234-35 (Tenn. Crim. App. 2012).

As grounds for consecutive alignment, the trial court applied section (b)(5), that the Defendant was convicted of two or more statutory offenses involving a minor, that is: two counts of rape of a child and aggravated sexual battery. The trial court then carefully reviewed each aggravating factor of section (b)(5) and determined that the record supported the application of each factor. The Defendant does not identify how the trial court abused its discretion in imposing consecutive alignment of the sentences. Upon our review, the record fully supports the trial court's consecutive sentencing determination. Accordingly, we conclude that the trial court properly imposed consecutive sentencing, and the Defendant is not entitled to relief.

_____
CAMILLE R. MCMULLEN, JUDGE