BIRCH, C.J., and DROWOTA, ANDERSON and REID, JJ., concur.

Elsie M. BALLARD, Col. Lewis P. Boone, Jr., USAF (Ret.), Otis N. Fussell, & Edgar Johnson, individually and on behalf of all others similarly situated, residents of Psalms, Inc., a Tennessee non-profit corporation, Plaintiffs–Appellants,

v.

Rudolf HERZKE, Charles S. Trammel, Jr., Retirement Communities of America–Tennessee, Inc., Psalms, Inc., and Retirement Communities of America, Inc., Defendants–Appellees.

Supreme Court of Tennessee, at Jackson.

June 10, 1996.

---

C. Barry Ward, Paul R. Lawler, Glankler Brown, Memphis, for Plaintiffs.

William R. Willis, Alfred D. Knight, Alan D. Johnson, Willis & Knight, Nashville, for Intervenors, The Tennessean and The Society of Professional Journalists.

W.J. Michael Cody, John W. Chandler, Jr., Douglas F. Halijan, Burch, Porter, & Johnson, Memphis, for Defendant, Psalms, Inc.

Hal Gerber, Lewie R. Polk, III, Gerber Law Offices, Memphis, for Defendant, Rudolf Herzke.

J. Alan Hanover, James R. Newsom, III, Hanover, Walsh, Jalenak, & Blair, Memphis, for Defendant, Charles Trammell, Jr. and Retirement Communities of America–Tennessee, Inc.

## OPINION

ANDERSON, Chief Justice.

In this appeal we are asked to determine whether the Chancery Court abused its discretion by modifying a protective order to allow access to discovery materials previously protected by the order and by allowing media intervention. The Court of Appeals reversed the Chancery Court, finding an abuse of discretion and reinstated the protective order which denied access to the discovery materials.

We conclude that the Chancery Court did not abuse its discretion either by modifying the protective order or by allowing intervention. The judgment of the Court of Appeals is, therefore, reversed and the Chancery Court's judgment modifying the protective order is reinstated.

### FACTUAL BACKGROUND

This case began on July 18, 1989, when the plaintiffs, residents of Kirby Pines Estates, a life care retirement community in Memphis, Tennessee, brought suit in Shelby County Chancery Court against the defendants, Psalms, Inc., a non-profit corporation which owns Kirby Pines; Rudolf Herzke, the chairman of the Board of Directors of Psalms, Inc.; Retirement Communities of America–Tennessee, Inc. ("RCA"), the management company that operates Kirby Pines; and Charles S. Trammell, the President of RCA.

The plaintiffs and the other residents of Kirby Pines entered into a written contract with Psalms. The contract requires residents to pay an entrance fee and a monthly maintenance fee, and in exchange, Psalms is obligated to provide the residents with care for life, including care in the nursing facility if necessary, at no additional charge.

Plaintiffs alleged in their complaint that the defendants had violated their fiduciary duties to the residents of Kirby Pines and had engaged in a conspiracy and outrageous conduct by denying the residents access to information about the operation of Kirby Pines; harassing the residents when they complained about the operation of the facility; paying an excessive management fee to defendant RCA; and making improper loans, all of which the defendants denied.

Discovery proceeded in the case, with the plaintiffs requesting production of documents and propounding written interrogatories. The documents requested related to the financial affairs of Kirby Pines, while the written interrogatories inquired into a wide range of topics, including the management of the facility; loans received by the defendants; information about residents; information about policies and procedures; and information about the defendants' personal income and income tax returns for various years. Claiming confidentiality, the defendants objected to many of the interrogatories and requests for production.

On July 27, 1990, Chancellor D.J. Alissandratos considered several motions filed by both sides concerning the scope and conduct of discovery. Following oral argument, he concluded that the plaintiffs' motion to compel discovery should be granted, and the defendants were given twenty days to fully respond to the interrogatories and produce the documents. In addition, however, without being requested to do so, the court, *sua sponte,* imposed a protective order to "protect[ ] the privacy of the defendants," while "at the same time giving counsel and counsel's experts an opportunity ... to review documents." The court ordered

> that all responses by Defendants to discovery shall be held by the Clerk of this Court under seal, and neither the documents produced, nor the responses to Interrogatories provided, nor any other responses to discovery shall be disclosed in any manner except to Plaintiffs' counsel, including counsel's staff and paralegals who are involved in this litigation (all of whom shall be instructed to keep such information confidential) or Plaintiffs' experts (such as certified public accountants who shall be instructed to keep such information confidential) and shall not be disclosed to Plaintiffs themselves, absent an Order of the Court or an agreement of counsel.

With the Chancellor's permission, the plaintiffs sought an interlocutory appeal of the protective order, which was denied by the Court of Appeals. The discovery responses were thereafter filed with the Chancery Court Clerk, who held the materials under seal pursuant to the protective order. The defendants objected to the scope and relevancy of much of the plaintiffs' discovery, but the Chancellor overruled the objections, citing the protections afforded by the protective order.

On at least two later occasions, plaintiffs moved to modify or dissolve the protective order, but Chancellor Alissandratos denied both motions. The plaintiffs' second motion requested modification of the protective order to allow disclosure of financial information to certain residents of Kirby Pines familiar with banking, business, and financial practices. Thereafter, the plaintiffs requested, and the Court of Appeals granted, an extraordinary appeal on that issue. After a hearing, the Court of Appeals modified the protective order to allow disclosure of the financial information to the named plaintiffs

> so as to allow counsel freely to confer, advise, and discuss with their clients all matters developed through discovery; provided, however, that such named plaintiffs shall themselves be subject to the protective order to the same extent as provided therein for plaintiffs' attorneys and they shall not disclose discovered information to others unless and until such time as directed or permitted by the trial court.

As modified by the Court of Appeals, the protective order was to remain in effect until

and "unless it is altered in the discretion of the trial court."

Thereafter, the State, on relation of the plaintiffs herein, filed a separate action in Shelby County Circuit Court against certain present and former directors of Psalms, Inc., alleging, among other things, an action in *quo warranto,* which is an action prosecuted in the name of the State for the benefit of the corporation to hold directors accountable for their management of the corporation. The circuit court dismissed that action. The Court of Appeals reversed the circuit court's dismissal of the *quo warranto* action, and this Court affirmed the Court of Appeals' judgment in *State, ex rel. Boone v. Sundquist,* 884 S.W.2d 438 (Tenn.1994).

Following release of our decision in that case, the plaintiffs again moved to dissolve or modify the protective order, asserting that it impeded their trial preparation by precluding conferences with unnamed plaintiffs. *The Tennessean,* a Nashville Tennessee newspaper, and the Society of Professional Journalists, (hereafter collectively *"The Tennessean"*), filed a motion to intervene for the purpose of requesting that the Chancery Court rescind its protective order so that all proceedings and records would be open to the press and the public. *The Tennessean* asserted that the protective order adversely impacted the public's right of access and the media's common law, statutory, and constitutionally guaranteed right of access to information of public interest and importance.

Concluding that circumstances had changed since the entry of the protective order, on October 28, 1994, Chancellor Floyd Peete, Jr.,[1] granted the plaintiffs' motion to modify the protective order, and allowed *The Tennessean* to intervene. The Chancellor modified the protective order so that only the discovery materials relating to the defendants' personal income and personal taxes would remain sealed. Specifically, the Chancellor found as follows:

> [T]he Court will note there are changed circumstances since the entry of the protective order. The Tennessee Supreme Court in its opinion on August 29th, 1994, allowed the Circuit Court suit brought by

the plaintiffs to be prosecuted in the name of the State with the consent of the District Attorney General as a *quo warranto* action for the benefit of the corporation to allow that the directors should be held accountable for their management of the corporation.

> The District Attorney General has indicated his plans to actively pursue this matter and prosecute this matter. Further, the lawsuit itself has become a public issue and a public controversy creating what this Court suspects are damaging rumors and speculations and other unnamed events and damages.

> In view of the changed circumstances, I am of the opinion that the protective order should be modified and that the seal should be lifted and all records should be open except the personal income tax returns of the defendants, sources of income and amounts of income of the defendants generated in matters unrelated to this litigation.

> The Court will also listen to counsel as to other limitations which may be acceptable to this Court.

The Chancellor also permitted *The Tennessean* to intervene and held that those discovery materials filed with the Chancery Court Clerk's office, no longer subject to the protective order, were "public records and should be open."

On October 28, 1994, the defendants requested, and the Court of Appeals granted, a motion for an extraordinary appeal, and stayed the Chancellor's modification of the protective order. Following oral argument on October 31, 1994, a three-judge panel of the Court of Appeals, took the case under advisement and ordered that the stay remain in effect pending their decision. On November 2, 1994, this Court declined to grant a motion to assume jurisdiction of the case pursuant to the "reach-down" provisions of Tenn.Code Ann. § 16–3–201(d). The Court of Appeals then rendered its decision on December 22, 1994, holding that the trial court abused its discretion when it modified the protective order and when it permitted

---

1. Chancellor Allisandratos recused himself from the case.

*The Tennessean* to intervene. Finding that the defendants had relied upon the protective order in answering the discovery requests, the intermediate court concluded that to permit the protective order to be dissolved "could permit the distribution of discovery data that might otherwise not have been discovered and the concomitant danger of the dissemination of non-relevant discovered information without any explanation." The Court of Appeals also concluded that the sealed discovery responses were not subject to the Tennessee Public Records Act.

Thereafter, we granted permission to appeal to clarify these important issues relating to media intervention, discovery, and public records.

## MEDIA INTERVENTION

*The Tennessean*, in this Court, argues that the Court of Appeals erred in denying it permission to intervene. The defendants respond that intervention is not necessary because the plaintiffs' adequately represent the interests of the media. We disagree.

Permissive intervention[2] is governed by Tennessee Rule of Civil Procedure 24.02, which provides in pertinent part as follows:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising discretion the court shall consider whether or not the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

■ If the would-be intervenor's claim or defense contains a question of law or fact that is also raised by the main action then the requirement of the rule has been satisfied and the trial court is afforded discretion to permit intervention. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

7C *Federal Practice and Procedure Civil 2d,* § 1911, pp. 358–63 (West 1986).

■ While our research has revealed no authority directly on point in this jurisdiction,[3] we agree with those federal and state courts in other jurisdictions which have routinely found that third parties, including media entities, should be allowed to intervene to seek modification of protective orders to obtain access to judicial proceedings or records. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 778 (3rd Cir.1994); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 898 (7th Cir.1994) (press should be allowed to challenge a protective order for abuse or impropriety); *Northern States Power Co. v. Westinghouse Elec. Corp.,* 156 F.R.D. 168 (D.Minn.1994) (intervention is the proper procedure for media challenge to protective order); *City of Hartford v. Chase,* 733 F.Supp. 533 (D.Conn.1990), *rev'd on other grounds,* 942 F.2d 130 (2nd Cir.1991) (media allowed to intervene to challenge sealing of document); *Courier–Journal v. Peers,* 747 S.W.2d 125 (Ky.1988) (hearing allowed to determine whether public's right of access was outweighed by the litigant's right of privacy); *see generally* 8 *Federal Practice & Procedure Civil 2d,* § 2044.1, p. 576–77.

In such circumstances, intervention "is not dependent on, nor is it determined by, the status or identification of the parties nor the nature of the dispute." *Id.* Moreover, the question of intervention is collateral to, and does not have any bearing on, the primary issue—modification of the protective order. What is necessary is that the proposed intervenor demonstrate that its claims have "a question of law or fact in common" with the main action.

■ Here, as in all such cases, by virtue of the fact that the media entities challenge the validity of the protective order entered in the main action, they meet the requirement of Rule 24.02, that their claim have "a question of law or fact in common" with the main action. Nonetheless, the interest of the

---

2. We need not discuss Tenn.R.Civ.P. 24.01 regarding intervention as of right, since we hold that the trial court properly exercised its discretion in allowing *The Tennessean* to intervene pursuant to the provisions of Tenn.R.Civ.P. 24.02.

3. *Cf. State v. Drake,* 701 S.W.2d 604 (Tenn.1985); *see also, State v. James,* 902 S.W.2d 911 (Tenn. 1995) (allowing media intervention to contest the closure of a criminal trial).

plaintiffs and the intervenors is not identical. The plaintiffs seek access to enhance their ability to prepare for trial. They are not attempting to gain access for public dissemination. Were the plaintiffs to settle this case, their interest in modifying the protective order would end. By contrast, the intervenors seek to gain access on behalf of the general public in order to disseminate the information through the media. Therefore, though the basic interest is the same, that of overturning the protective order, the interests are not identical, and intervention is appropriate.

Where, as here, a common question of law or fact is established, the decision to allow intervention is a matter entrusted to the trial court's discretion, and the decision should not be reversed by an appellate court absent a showing of abuse of discretion. Nothing in this record reveals that the Chancery Court abused its discretion in allowing intervention. We hold that the Chancellor properly exercised his discretion in allowing *The Tennessean* to intervene. Accordingly, the Court of Appeals' judgment denying intervention is reversed. We must next consider whether the Chancellor abused his discretion in modifying the protective order.

## MODIFICATION OF THE PROTECTIVE ORDER

Both the plaintiffs and the intervenors argue that the Chancery Court's modification of the protective order was a proper exercise of its discretionary authority under Tenn. R.Civ.P. 26.03. On the other hand, the defendants contend the Court of Appeals was correct in reversing the trial court's judgment, because the Chancellor failed to consider that the defendants fully responded to the discovery requests in reliance on the protective order. A proper analysis of this issue requires that we review the standards governing the issuance of a protective order, and those governing modification of an already-existing protective order.

Under Rule 26.03, Tenn.R.Civ.P., upon motion by any party and for good cause shown, a trial court has the authority to make any order "to protect a party or person from annoyance, embarrassment, oppression,

or undue burden or expense, including ..." ordering that the discovery responses be filed under seal, as was done in this case. Protective orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings. In addition, protective orders are often used by courts as a device to aid the progression of litigation and to facilitate settlements. Protective orders strike a balance, therefore, between public and private concerns. *Pansy*, 23 F.3d at 786.

To establish "good cause" under Rule 26(c), the moving party must show that disclosure will result in a clearly defined injury to the party seeking closure. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not amount to a showing of good cause. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986). Mere conclusory allegations are insufficient. The burden of justifying the confidentiality of each and every document sought to be covered by a protective order is on the party seeking the order. *Id.; see also Loveall v. American Honda Motor Co.*, 694 S.W.2d 937, 939 (Tenn.1985).

In determining whether good cause has been established for a protective order, it is important that trial courts balance one party's need for information against the injury that would allegedly result if disclosure is compelled. Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv.L.Rev. 427, 433–35 (1991). Factors in the balance weighing against a finding of good cause include: (1) the party benefitting from the protective order is a public entity or official; (2) the information sought to be sealed relates to a matter of public concern; and (3) the information sought to be sealed is relevant to other litigation and sharing it would promote fairness and efficiency. *Pansy*, 23 F.3d at 787.

On the other hand, factors in the balance weighing in favor of a finding of good cause include: (1) the litigation involves pri-

vate litigants; (2) the litigation concerns matters of private concern or of little legitimate public interest; and (3) disclosure would result in serious embarrassment or other specific harm. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34–36, 104 S.Ct. 2199, 2208–09, 81 L.Ed.2d 17 (1984); *Cipollone,* 785 F.2d at 1121. No particular weight is assigned to any factor, and the balancing test allows trial courts to evaluate the competing considerations in light of the facts of each individual case. Miller, 105 Harv.L.Rev. at 492. The ultimate decision as to whether or not a protective order should issue is entrusted to the sound discretion of the trial court and it will not be reversed on appeal, absent a showing of abuse of discretion. *Loveall,* 694 S.W.2d at 939. The burden of establishing abuse of discretion is on the party seeking to overturn the trial court's ruling on appeal. *See Rachels v. Steele,* 633 S.W.2d 473, 475 (Tenn.Ct.App.1981). To facilitate effective appellate review, trial courts should articulate on the record findings supporting its decision. *Pansy,* 23 F.3d at 789. In appropriate cases, the trial court may deem it necessary to seal that portion of the record which contains its findings, for in some circumstances, the court's open articulation of its findings would compromise the protective order. *Id.*

■ Once entered, protective orders need not remain in place permanently, however, and their terms are not immutable. It is well-settled that a trial court retains the power to modify or lift a protective order that it has entered. *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 535 (1st Cir.1993); *Beckman Industries, Inc. v. International Ins. Co.,* 966 F.2d 470, 472 (9th Cir.1992); *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir.1990); *see generally 8 Federal Practice & Procedure Civil 2d* § 2044.1, p. 576, n. 8 (citing cases).

■ There is disagreement among courts, however, as to the standard that governs a trial court's decision on requests for modification. Emphasizing the need to fos-

ter use of protective orders as a means of facilitating discovery, and reasoning that allowing modification lessens the reliability of protective orders as a facilitation device, a few courts have adopted a restrictive attitude toward modification. *See e.g. Palmieri v. New York,* 779 F.2d 861, 864–66 (2d Cir. 1985); *Federal Deposit Ins. Corp. v. Ernst & Ernst,* 677 F.2d 230, 232 (2d Cir.1982); *United States v. Kentucky Utils. Co.,* 927 F.2d 252, 255 (6th Cir.1991); *but see Meyer Goldberg, Inc. of Lorain v. Fisher Foods, Inc.,* 823 F.2d 159, 163–64 (6th Cir.1987). Courts adopting the restrictive standard, pioneered by the Second Circuit, do not allow modification, absent a showing of improvidence in the grant of the initial protective order, or some extraordinary circumstance, or some compelling need. *Id.*

Most courts have rejected the stringent standard, and in determining whether modification is warranted, apply a derivative of the standard governing the "good cause" analysis. *See e.g. Pansy,* 23 F.3d at 791; *Beckman Indus., Inc.,* 966 F.2d at 475–76; *United Nuclear Corp.,* 905 F.2d at 1428; *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 791 (1st Cir.1988); *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949, 954 (8th Cir. 1979). We agree that the restrictive standard adopted by the Second Circuit is too stringent, and adopt the Third Circuit's approach which utilizes the balancing test for determining whether to impose a protective order in the first instance, with consideration given to one additional factor—the reliance by the original parties on the protective order. *Pansy,* 23 F.3d at 790. While this approach recognizes the importance of fostering reliance on and confidence in protective orders, that single consideration is not outcome determinative, as it is under the Second Circuit's standard. The parties' reliance is but one factor a court should consider in the balance when determining whether modification of a protective order is appropriate.[4] *Id.; see also 8 Federal Practice and Procedure Civil 2d,* § 2044.1, p. 583.

---

**4.** The fact that the parties reliance becomes relevant later on illustrates how important it is for courts to initially conduct a proper balancing analysis to determine whether a protective order

should be granted. *Pansy,* 23 F.3d at 789, note 23. In any event, reliance upon a protective order that is improvidently granted in the first instance will not insulate that order from subse-

"The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery...." *Beckman Indus., Inc.*, 966 F.2d at 475–76 (citation omitted). In that respect, trial courts must consider whether reliance is real and reasonable or is only an effort by litigants to avoid later modification. Although reasonable cooperation is some evidence of reliance, it is not determinative. For example, blanket protective orders, are particularly useful in effecting cooperation and expediting the flow of pretrial discovery; however, they are also, by nature, over inclusive, less likely to induce reasonable reliance, and therefore, peculiarly subject to later modification. *Id.; accord Public Citizen*, 858 F.2d at 790. Accordingly, reliance on a blanket protective order ordinarily weighs little in the balance against modification. The appropriate procedure, following delivery of documents under a blanket protective order, is to allow the party seeking to maintain confidentiality an opportunity to indicate precisely which documents are allegedly confidential. The party seeking to maintain the seal then has the burden of establishing good cause with respect to those documents. *Cipollone*, 785 F.2d at 1122.

■■■■ In sum, once a party moves to modify a protective order, a trial court must balance the factors initially considered when determining good cause, and in addition, consider the reliance of the original parties to the order, to determine whether good cause *still* exists for the order. As previously explained, if access to protected materials can be granted without causing harm to legitimate privacy interests, access should be granted. Unless the motion seeks to modify a blanket protective order, the movant has the burden of establishing that the need for access to the materials outweighs the privacy concerns. *Pansy*, 23 F.3d at 790. When modification of a blanket protective order is sought, the party seeking to maintain confidentiality must designate the documents alleged to be confidential and then establish

that good cause exists with respect to those documents.

■■■■ Applying the above principles to the facts of this case, we conclude that the Court of Appeals erred in reversing the Chancellor's judgment modifying the protective order. Here, the first blanket protective order was initially entered upon the *court's* own motion. The defendants were not required, therefore, to muster a good cause showing as to why the order should be granted, and the only basis for the protective order reflected by the record is the Chancellor's statement that it was an effort to "protect the privacy of the defendants while giving the plaintiffs' counsel and their experts an opportunity to review documents." Later, Chancellor Allisandratos said the protective order was given in exchange for the "fishing license" afforded the plaintiffs. At no time, however, did Chancellor Allisandratos lead the defendants to believe that the protective order would forever prevent disclosure. Indeed, he emphasized his concern was with *premature disclosure*. This, therefore, was a blanket protective order meant to facilitate discovery and is, therefore, peculiarly subject to modification.

In ruling upon the plaintiffs' motion to modify, Chancellor Peete considered the following factors favoring modification: (1) the fact that the litigation involves a matter of public concern; and (2) the existence of other related ongoing litigation. Both of these are appropriate factors for consideration. To protect the privacy interests of the defendants, Chancellor Peete maintained the seal of the protective order on the records pertaining to their personal income and taxes. In consideration of the defendants reliance interest, he offered them an opportunity to suggest other limitations, which is the appropriate procedure, as previously stated, when modification of a blanket protective order is sought. Here, the record reflects that the defendants did not raise any further specific objections.

---

quent modification. Where it is apparent that a trial court did not engage in proper balancing to initially determine that good cause supported

issuance of the protective order, modification is proper. *Id.* at 790.

 The Court of Appeals reversed Chancellor Peete's decision primarily because it held the defendants' reliance on the protective order precluded modification. However, as we have previously noted, reliance is only one factor to be considered in the balancing test. Here, the reliance interest is not so strong as to preclude modification. From the time of entry of the protective order, eventual disclosure has been inevitable. Moreover, we emphasize that the trial court is in the best position to weigh fairly the competing needs and interests of the parties. *Seattle Times Co.*, 467 U.S. at 36, 104 S.Ct. at 2209. Unless a trial court has applied an incorrect legal standard, or it affirmatively appears on the record that a trial court abused its discretion, appellate reversal is not warranted. Discretion denotes the absence of a hard and fast rule. When invoked as a guide for judicial action, it requires that the trial court view the factual circumstances in light of the relevant legal principles and exercise considered discretion before reaching a conclusion. Discretion should not be arbitrarily exercised. The applicable facts and law must be given due consideration. *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520, 526 (1931). An appellate court should not reverse for "abuse of discretion" a discretionary judgment of a trial court unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining. *Douglas v. Estate of Robertson*, 876 S.W.2d 95, 97 (Tenn.1994); *Foster v. Amcon Intern.*, 621 S.W.2d 142, 145 (Tenn.1981).

Accordingly, we hold that Chancellor Peete properly exercised his discretion in modifying the protective order and the Court of Appeals' judgment is, therefore, reversed.

### TENNESSEE PUBLIC RECORDS ACT

The intervenors argue that all the discovery responses, including those items which remain subject to the protective order, are "public records" within the meaning of the Tennessee Public Records Act and therefore must be made available for inspection.

 We begin our analysis by acknowledging that it is beyond dispute that there exists in this country a general right to inspect and copy public records and documents, including judicial records and documents. *Cf. Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). The public's right to access provides public scrutiny over the court system which serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding. *Grove Fresh Distributors, Inc.*, 24 F.3d at 898. The right of access to judicial proceedings and records was originally justified by common law traditions predating the enactment of the federal Constitution. The common law right of access establishes that court files and documents should be open, unless the court finds that the records are being used for improper purposes. *Id.* Moreover, the First Amendment to the Constitution presumes that there is a right of access to proceedings and documents which have "historically been open to the public" and which disclosure would serve a significant role in the functioning of the process. *Id.*

 The public records law is essentially a codification of the public access doctrine. That law designates certain judicial records as "public records." *See* Tenn.Code Ann. § 10–7–101 ("records.... shall be construed to mean any records of the Chancery Court."); Tenn.Code Ann. § 10–7–403 ("public records" means "the pleadings, documents, and other papers *filed* with the Clerks of all courts") (emphasis added). Although pretrial depositions [5] and interrogatories generally are not considered to be public components of a civil trial, *Seattle Times Co.*, 467

---

**5.** We recognize that we have previously held that pretrial depositions taken by governmental agencies are "public records" within the meaning of the public records law. *Memphis Publishing Co. v. City of Memphis*, 871 S.W.2d 681 (Tenn.1994). In that case, we specifically rejected the argument that the depositions were exempt, because they were not filed with the Court. In *Memphis Publishing Co.*, however, we were not construing court records, but were determining whether the records were public, because they were records of a state, county, or municipal government.

U.S. at 33, 104 S.Ct. at 2207, in Tennessee, discovery responses are required, absent a trial court order or local rule, to be filed with the clerk of the Court. Tenn.R.Civ.P. 5.05. Although some courts have promulgated local rules exempting discovery responses from the filing requirement, *see, e.g.,* Davidson County Local Rule of Practice 9.01, the Shelby County Chancery Court has no such local rule and the record reveals no order exempting the parties in this case from the filing requirement. Consequently, it is abundantly clear that discovery responses filed with the Clerk of the court, are "public records" within the meaning of the law.

However, that conclusion does not end the inquiry because some of the discovery responses in this case are still subject to a protective order that was entered in accordance with the Tennessee Rules of Civil Procedure. Tenn Code Ann. § 10–7–503(a) provides that governmental records shall be subject to public access, "unless otherwise provided by State law." In *Appman v. Worthington,* 746 S.W.2d 165 (Tenn.1987), we held that the Public Records Act does not authorize public inspection of documents in a criminal case that are exempt from discovery by Rule 16, Tennessee Rules of Criminal Procedure. We reasoned that the Rules of Criminal Procedure are the law of this State, and therefore, are encompassed within the phrase, "unless otherwise provided by State law." Accordingly, we concluded that materials exempt from discovery by the rules of criminal procedure are not subject to inspection under the Tennessee Public Records Act.

The same reasoning applies in this case. The Rules of Civil Procedure are the "law" of this state. *Tennessee Department of Human Services v. Vaughn,* 595 S.W.2d 62 (Tenn.1980). The protective order therefore was entered pursuant to "State law." Accordingly, documents sealed by the protective order are not subject to inspection under the Tennessee Public Records Act.[6]

## CONCLUSION

Because we conclude that the Chancery Court did not abuse its discretion either by modifying the protective order or by allowing intervention, the judgment of the Court of Appeals is reversed. The judgment of the Chancellor modifying the protective order is reinstated, and this cause is remanded to the Chancery Court for further proceedings. Costs on appeal are taxed to the defendants.

DROWOTA, REID, WHITE and BIRCH, JJ., concur.

---

6. We note that this ruling does not offend First Amendment considerations. In *Seattle Times Co. v. Rhinehart, supra,* the United States Supreme Court held that protective orders entered upon a showing of good cause, limited to the context of pretrial civil discovery and which do not restrict the dissemination of the information if gained from other sources, do not offend the First Amendment. Moreover, the common law right of access to public records is not absolute. The Court retains its supervisory power over its files and records. *Nixon v. Warner Communications, Inc.* 435 U.S. at 598, 98 S.Ct. at 1309.