

**FILED**
**Feb 27, 2026**
**10:54 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Candie Marie Hernandez | Docket No. 2024-30-6638 |
| v. | State File No. 30126-2024 |
| Wal-Mart Associates, Inc., et al. | |
| Appeal from the Court of Workers' Compensation Claims Pamela B. Johnson, Judge | Heard February 12, 2026, in Knoxville, Tennessee |

---

### Affirmed and Remanded

---

At issue in this interlocutory appeal is the scope of discovery in a workers' compensation case. The employee alleged she suffered severe injuries after being exposed to carbon monoxide at work. The employer accepted the compensability of the accident and paid certain temporary disability and medical benefits, but it reserved the right to later assert defenses to the claim. The employee forwarded written discovery requests to the employer then, after receiving the employer's responses, asserted that the employer failed or refused to provide relevant information in response to those requests. The employer objected that certain of the employee's requests sought information irrelevant to the workers' compensation claim, were not reasonably calculated to lead to the discovery of admissible evidence, or that the information sought included trade secrets, proprietary information, or sensitive material that should be subject to a protective order. Following the filing of multiple motions to compel, a motion for sanctions, and multiple motions for a protective order, the trial court conducted a hearing, after which it: (1) denied the employer's motion for a protective order; (2) granted the employee's motion to compel discovery; and (3) held the employee's motion for sanctions and a referral to the Bureau's compliance unit in abeyance. The employer has appealed. We affirm the trial court's order, find the employer's appeal frivolous, and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

A. Allen Grant and Scott A. Morell, Nashville, Tennessee, for the employer-appellant, Wal-Mart Associates, Inc.

Brad C. Burnette, Clinton, Tennessee, for the employee-appellee, Candie Marie Hernandez

**Factual and Procedural Background**

On April 30, 2024, Candie Marie Hernandez ("Employee") was exposed to carbon monoxide along with multiple other employees while working for Wal-Mart Associates, Inc. ("Employer"), at a Sam's Club location in Knox County, Tennessee. Employer acknowledged the occurrence of the event and initiated the provision of workers' compensation benefits to Employee. At issue in this appeal are several discovery requests Employee forwarded to Employer, which have been the subject of multiple motions to compel discovery filed by Employee and multiple motions for protective order filed by Employer. Employee has asserted that the discovery requests fall squarely within Tennessee Rule of Civil Procedure 26.02, which allows a party to seek discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Tenn. R. Civ. P. 26.02(1). Employer counters that certain of Employee's requests are irrelevant to her claim for workers' compensation benefits, which is the subject matter of this pending litigation, are not reasonably calculated to lead to the discovery of admissible evidence, and/or should be protected from discovery. It further asserts that Employee is improperly attempting to use the discovery process in the present case to obtain information solely relevant to her third-party tort action.

*Procedural History of Discovery Disputes*

Employee filed her petition for benefit determination on October 4, 2024. When the dispute certification notice ("DCN") was issued on November 8, Employee asked that the DCN include as a disputed issue Employer's alleged failure to "fully respond to Interrogatories and Requests for Production of Documents." For its part, Employer asked that the DCN include the following language: "Employer retains the right to include additional defenses as further discovery and investigation is conducted into the facts of Employee's medical conditions and claims."

Employee filed her first motion to compel discovery on November 25. In early December, Employer filed a response to the motion, arguing, in part, that "[i]t is in no way Employer's . . . intent to prevent Employee's ability to pursue the nature of her civil right of action against a third-party tortfeasor." It further asserted that "additional, relevant information" Employee sought "will likely be most easily obtainable through potential third parties that would be subject to litigation in a potential civil action outside of the Court of Workers' Compensation [Claims] and its jurisdiction." On December 10, Employee withdrew her motion to compel discovery.

In February 2025, Employee filed her second motion to compel discovery, a motion to exceed the maximum of twenty written discovery requests pursuant to Tenn. Comp. R. and Regs. 0800-02-21-.17(2)(b) (2023), and a notice to take the depositions of "one or more representatives" of Employer. In its notice, Employee included a list of twenty-three separate items, with subparts, about which Employer's representatives were expected to be

questioned during such depositions.  Employer filed a motion to quash that notice, asserting that Employee's itemization of matters to be discussed during such depositions "is not relevant to Employee's accepted workers' compensation claim."  In a pair of March 14, 2025 orders, the trial court granted Employee's motion to expand discovery and granted in part her motion to compel discovery.  It also granted in part Employer's motion to quash.  The court determined that Employer "shall provide corporate representatives to testify but only as to the issues specifically pertaining to information and knowledge available to [Employer's] personnel."  It also instructed Employer to respond to discovery "*to the extent* that the information and/or documentation is within the knowledge and control of [Employer]."  (Emphasis in original.)

In May 2025, Employer filed a Motion for Protective Order.  Its stated purpose in filing the motion was "to limit further discovery requests that Employer contends have been responded to" and to limit Employee's opportunities for discovery "in pursuit of benefits under this workers' compensation action" that are "irrelevant and solely for the purpose of Employee's pursuit of her third-party litigation."[1]

After Employee filed a response to the motion for protective order in late May, but before the trial court had addressed the motion, Employer filed a second motion for protective order in mid-June, apparently because Employee had served on it requests for admissions pursuant to Tennessee Rule of Civil Procedure 35.  Employer asserted, in part, that certain of Employee's requests for admissions constituted "an attempt to use an improper forum to advance a claim wholly outside of this Court's jurisdiction."  It further asked the court to "prevent[] Employee from utilizing Employer's responses in any litigation outside of Employee's workers' compensation claim and this Court's jurisdiction."

Following a June 19 hearing to address all pending motions and discovery disputes, the Court issued an order on June 27, 2025, denying Employer's motions for a protective order but granting its request for additional time to respond to Employee's requests for admissions.  The court reasoned that it would not comment on the sufficiency of certain of Employer's discovery responses without a pending motion to compel.  The court also noted Employer's argument that, because it had "accepted" Employee's workers' compensation claim and was paying benefits, Employee's right to seek certain information through discovery was somehow curtailed.  In rejecting that argument, the trial court reasoned that although certain benefits were being paid, Employer had explicitly reserved the right to assert any defenses to the claim at a later date.  As a result, the trial court reiterated its earlier ruling that Employer shall respond to discovery "*to the extent* that the information

---

[1] During oral argument, Employer further explained that one purpose of its motion for protective order was to test the sufficiency of responses it had already provided to certain of Employee's interrogatories, which included objections to relevance and assertions of "trade secrets" and "protected, confidential information."

and/or documentation requested is within the knowledge and control of [Employer] or its workers' compensation carrier." (Emphasis in original.)

In August 2025, Employee filed her third motion to compel discovery responses and asked for sanctions to be imposed on Employer for its alleged failure to cooperate with discovery. Specifically, Employee addressed disputes that had arisen regarding the following discovery requests:

- Interrogatory No. 1 sought to determine who, on behalf of Employer, had contributed to the preparation of the discovery responses. Employer's response identified a claims adjuster employed by its third-party administrator and its defense counsel. The response listed no corporate representative, officer, manager, supervisor, or any other employee of Employer who contributed information or was authorized to sign discovery responses on its behalf.[2]

- Interrogatory No. 2 asked Employer to identify, by name, address, telephone number, and employer, "all persons having knowledge of any discoverable facts pertaining to the matters and issues in this cause of action." Employer initially stated that it would provide contact information for such individuals directly to Employee's counsel. In an amended version of its responses forwarded several months later, it identified other employees who were present in the area of the carbon monoxide leak, but it also objected to this interrogatory as irrelevant, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information, asserting it had acknowledged the occurrence of the accident and had identified the source of the carbon monoxide leak.

- Interrogatory No. 20 asked Employer to "[d]escribe with particularity the Employer's policies concerning the investigation of work-related injuries" and to attach a copy of any such policy. Initially, Employer provided a copy of its spill clean-up policy. It then objected to the production of written protocols or guidance, asserting that such information was irrelevant, overly broad, unduly burdensome, proprietary, and constituted "trade secrets" and "confidential business practices" that cannot be produced absent a proper protective order.

---

[2] The initial version of Employer's responses, apparently submitted to Employee's counsel in November 2024, was not signed or sworn to by any employee of Employer although it was signed and submitted by defense counsel. A subsequent version of Employer's interrogatory responses, submitted February 19, 2025, provided some additional information, but, again, was not signed or sworn to by any employee of Employer.

4

- Interrogatory No. 21 asked Employer to identify any individuals by name, title, and investigative role, whether employed by it or a third party, who participated in the investigation of the cause of the carbon monoxide leak. At some point, Employer identified the store manager who became aware of the leak and conducted a preliminary investigation, and it indicated that "further investigation is ongoing." Employee asserted that this response was incomplete in that it failed to identify multiple other people involved in investigating the incident and the source and cause of the carbon monoxide leak. Employer asserted during oral argument that any such additional information is irrelevant to Employee's claim for workers' compensation benefits because Employer has acknowledged the occurrence of the accident and initiated the payment of workers' compensation benefits.

- Request for Production No. 19 sought copies of all investigative reports addressing the incident and the cause of the carbon monoxide leak. Employer apparently acknowledged in its responses to Employee's Requests for Admissions that it had investigative reports prepared by industrial hygienists, environmental consultants, and/or safety consultants regarding the incident, but it declined to provide copies of any such reports because it asserted the information sought is irrelevant to Employee's workers' compensation claim and/or not reasonably calculated to lead to the discovery of relevant, admissible evidence.

- Request for Production No. 20 sought copies of all documents, reports, and/or written communications Employer received from any state or regulatory agency regarding the incident. Employer provided what it identified as a copy of an OSHA report, which Employee asserted was incomplete, but did not identify or produce copies of communications from any governmental agencies that investigated the incident.

Employer responded to the motion to compel and also filed its third motion for a protective order. Employer asserted that it had made good faith efforts to seek an agreeable resolution of the pending discovery issues, but the parties had been unable to do so. It insisted that Employee not use any information or documentation it may obtain from Employer in the context of any litigation other than this workers' compensation case. In addition, Employer asserted that Employee "has yet to articulate any disputes" pertaining to the payment of workers' compensation benefits that would support a need for additional discovery. Finally, it maintained that Employee's right to seek discovery is limited "given the fact that Employee's exposure is not in dispute."

In September 2025, Employer filed a Rule 72 Declaration of the claims representative employed by its third-party administrator, which is a corporate entity separate from Employer. The claims representative affirmed that she has handled

Employee's claim for workers' compensation benefits since its inception and that she accepted the compensability of the claim and issued various benefits to date, but she stated she "[does] not manage [Employer's] interests or claims with regard to Employee's third-party litigation." She also verified that she "reviewed discovery responses answering Employee's Interrogatories and Requests for Production, and all responses were accurate to the best of [her] knowledge at the time of signing."

Following another hearing to address all pending discovery disputes, during which no other testimony or documentary evidence was offered, the trial court issued the order that is the subject of this appeal. The trial court concluded it had already addressed Employer's objections and arguments in prior orders and that Employer's attempt to "re-litigate these issues" was "an affront to judicial economy." It further concluded that Employer failed to comply with its earlier orders, and it again ordered Employer to "produce the discovery as previously ordered." The court noted that "[t]he adjuster for [Employer's insurance] carrier's third-party administrator is not . . . personnel [of Employer]." Finally, it held Employee's request for sanctions and a referral to the Bureau's Compliance Unit in abeyance pending further developments. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). A trial court's decisions regarding pretrial discovery are discretionary and will be reviewed under an "abuse of discretion" standard. *Doe 1 ex rel. Doe 1 v. Roman Cath. Diocese of Nash.*, 154 S.W.3d 22, 42 (Tenn. 2005). An abuse of discretion is found if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). "Whether a court applied an incorrect legal standard is a question of law that is reviewed de novo." *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 210 (Tenn. 2019). We are required to "review a [trial] court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by the evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010) (internal citations omitted). The abuse of discretion standard does not permit us to merely substitute our judgment for that of the trial court. *See Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor "either the employee or the employer." Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

In its brief, Employer first asserts that the information Employee seeks through discovery "has no relevance to and is inadmissible within this Tennessee Workers' Compensation Claim." Second, Employer argues that such discovery "could irreparably harm . . . Employer in unrelated lawsuits if disclosed." Finally, it asserts that the trial court erred by failing to engage in the balancing of interests mandated by binding precedent.

As a preliminary matter, we note that the Tennessee Rules of Civil Procedure and the Tennessee Rules of Evidence are applicable to hearings conducted by the Court of Workers' Compensation Claims. *See* Tenn. Code Ann. § 50-6-239(c)(1). Moreover, these rules, as well as administrative rules and regulations, have the "force and effect of law." *Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *7 (Tenn. Workers' Comp. App. Bd. May 18, 2015).

*Scope of Rule 26.02*

Tennessee Rule of Civil Procedure 26.02 states that parties to a lawsuit "may obtain discovery regarding *any matter*, not privileged, which is *relevant to the subject matter* involved in the pending action." Tenn. R. Civ. P. 26.02(1) (emphases added). In addition, discovery requests can seek information concerning "the existence, description, nature, custody, condition[,] and location of any books, documents, or other tangible things, and electronically stored information," as well as the "identity and location of persons having knowledge of any discoverable matter." *Id.* Finally, the rule provides that it is "not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

As we recently explained in *Hurt v. Vinebrook Homes Trust, Inc.*, No. 2025-80-1095, 2025 TN Wrk. Comp. App. Bd. LEXIS 52 (Tenn. Workers' Comp. App. Bd. Oct. 6, 2025):

> [P]ursuant to Rule 26 of the Tennessee Rules of Civil Procedure, discovery must be relevant to the subject matter of the action or reasonably calculated to lead to the discovery of admissible evidence, and it must be appropriate to the needs of the case. Rule 26.02 specifically gives a trial court the discretion to limit discovery depending on the needs of the case, the amount in controversy, . . . and the importance of the issues at stake in the litigation. In addition, the trial court must properly balance [a party's] need for this information against the harm that could result from its disclosure.

*Id.* at *11 (internal citations and quotation marks omitted).

7

In *West v. Schofield*, 460 S.W.3d 113 (Tenn. 2015), the plaintiffs, who were challenging the constitutionality of Tennessee's lethal injection execution protocol, sought to determine the identities of persons involved in the facilitation and carrying out of executions. *Id.* at 116. The State objected, but the trial court ordered it to provide that information through discovery. *Id.* On appeal, the Tennessee Court of Appeals affirmed the trial court's order, but, on further appeal, the Tennessee Supreme Court reversed. *Id.* at 120.

In explaining its holding, the Supreme Court first noted that the threshold question underpinning any discovery request is relevance. It explained:

> [T]he crucial issue in determining the relevance of any particular information for the purposes of Rule 26, and therefore its discoverability, is whether it has (or will lead to information which has) some probative value as to the subject matter involved in the pending action. Accordingly, before compelling discovery under Rule 26, a trial court first must determine what is included in the subject matter involved in the pending action.

*Id.* at 125 (internal quotation marks omitted). The Court then discussed the balancing test a trial court must use when analyzing discovery disputes. *Id.* at 127-28. It explained that, even if the requested information is not privileged and is relevant to an issue in the case, the trial court should still "balance the specific need for the information against the harm that could result from [its] disclosure." *Id.* at 128. The Court then determined that the trial court had "failed to give adequate consideration to the State's need to protect the privacy of those involved in the execution of condemned inmates." *Id.*

In a medical malpractice case, *Thomas v. Oldfield*, No. M2006-02767-COA-R9-CV, 2007 Tenn. App. LEXIS 680 (Tenn. Ct. App. Nov. 7, 2007), the plaintiff sought to obtain discovery about any liability insurance maintained by the defendants. *Id.* at *1. The trial court had granted the plaintiff's motion to compel the production of this information, but the Court of Appeals reversed. *Id.* First, the Court explained that the term "subject matter" as used in Rule 26.02 refers to "the issue presented for consideration" or "the thing in which a right or duty has been asserted." *Id.* at *9 (quoting Black's Law Dictionary (8th ed. 2004)). Second, the court emphasized that "the scope of discovery is not coextensive with the standards for the admissibility of evidence; indeed, it is *far broader*." *Id.* at *11 (emphasis added). The court ultimately rejected the plaintiff's efforts to obtain information concerning the defendant's liability insurance as "he has articulated no connection between the liability insurance information and the preparation of his case for trial." *Id.* at *13.

*Employer's Objections to Discovery Requests*

Here, we conclude Employee has, in fact, articulated a rational connection between the information she seeks through discovery and the subject matter of the case pending in

the Court of Workers' Compensation Claims. First, she seeks the identities of anyone who may have "knowledge of any discoverable facts pertaining to the matters and issues in this cause of action." Although Employer provided a list of other employees who were present at the time of the leak, it has, to date, identified only one individual, the store manager, who conducted a "preliminary investigation" of the incident, despite Employee's assertion and Employer's acknowledgment that other individuals participated in subsequent investigations into the circumstances and cause of the carbon monoxide leak. Employer has objected to providing the names of any other individuals who investigated the cause of the leak on the theory that it has "accepted" Employee's claim as compensable and, therefore, the identities of other individuals who investigated the accident are "not relevant" to Employee's claim for benefits.

Second, Employee seeks copies of any of Employer's written policies concerning the investigation of work-related injuries. In response, Employer provided a copy of a written policy addressing its protocol for the clean-up of spills. When Employee challenged the completeness of this response, Employer objected that the information sought constitutes "protected trade secrets" and "confidential business practices." Yet, it offered no witness testimony, sworn statements, affidavits, or other evidence of any kind explaining *how* such information merits protection from discovery.[3]

Third, Employee seeks information about investigations Employer conducted into the work-related incident. In response, Employer referred it to a "subrogation adjuster." In later responses, Employer acknowledged there were individuals other than the store manager who investigated the incident. In fact, the store manager testified during his deposition that several people, whom he could not identify by name, came to assist in a thorough investigation. Furthermore, although Employer repeatedly stated in its discovery responses that its investigation was "ongoing," the store manager testified he would be aware if any other investigations were being conducted in his store and that, as far as he knew, all such investigations had been completed as of the date of his deposition.

Finally, Employee seeks copies of all documents pertaining to the work-related incident in the custody or control of Employer, including investigative reports. It also requested copies of any documents or communications between it and "state agencies or regulatory agencies." After first stating that it would supplement its responses to these

---

[3] After Employer filed its notice of appeal in this case, it filed a "Notice of Filing" in November 2025 informing the trial court that it had "supplemented [its response to] Interrogatory 20" by providing Employee with copies of its "Associate Working-Related [sic] Injury Policy" and its "Management Guidelines for Associate Work-Related Injur[ies]." Thus, to the extent that any arguments on appeal are directed toward the information requested in Interrogatory 20, we conclude all such arguments are moot as to that specific information.

requests, Employer later objected that the information requested was irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[4]

### *Application of Rule 26 Standards to Facts of Case*

Employer's interpretation of Rule 26 and the scope of discovery in workers' compensation cases is unduly restrictive and untenable. It is a fundamental tenet of workers' compensation law that an employer can authorize medical treatment and initiate the payment of disability benefits without jeopardizing its right to contest the compensability of the claim at a later date. In fact, Tennessee Code Annotated section 50-6-205(b)(2) explicitly states that "[e]vidence of the initiation or denial of the compensation is inadmissible in a subsequent proceeding concerning the issue of the compensability of injury." Thus, regardless of whether Employer "accepted" this claim and initiated benefits, it has the statutory right to later terminate benefits, deny the claim, and litigate all issues in the case absent some evidence that would support equitable estoppel. In fact, Employer explicitly reserved its right to contest compensability when it asked the mediator to amend the DCN to reflect that "Employer retains the right to include additional defenses as further discovery and investigation is conducted into the facts of Employee's medical conditions and claims." In addition, Employer has denied that Employee is permanently and totally disabled as a result of this incident, thereby bringing into question the nature and extent of the permanent disability Employee claims to have suffered due to the work accident.

Moreover, there are no formal stipulations in this record. A stipulation, which requires the mutual assent of both parties, can obviate the need for evidence as to the stipulated matter. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999); *see also Prater v. Louisville & Nash. R.R. Co.*, 462 S.W.2d 514, 518 (Tenn. Ct. App. 1970) ("[S]tipulations, in procedural terminology, are agreements entered into between the parties concerning matters of fact . . . . Stipulations in respect to facts, thus, dispense with all evidence as to those facts."). The Court of Appeals has explained that "[s]tipulations bind the parties and prevent them from asserting a contrary position to the stipulation, even on appeal." *Knizley v. Knizley*, No. M2018-00490-COA-R3-CV, 2019 Tenn. App. LEXIS 576, at *6 (Tenn. Ct. App. Nov. 27, 2019). Thus, Employer's insistence that it has "accepted" Employee's claim and that, therefore, the information Employee seeks through discovery is irrelevant is without any legal support and rests on illusory assertions. Employer has retained the right to contest any aspect of Employee's case at any time up to and including trial. Employee's burden of proof is not changed by Employer's decision to "accept" her claim and initiate certain benefits. She must still prove every essential element of her claim by a preponderance of the evidence, including the compensability of the

---

[4] Although Employer provided what was apparently a portion of an OSHA report, it later admitted that other documents exist pertaining to the investigation of the incident. However, it has declined to provide those documents.

accident and the nature and extent of any alleged injuries and permanent disabilities she claims were caused by the incident.

We conclude the trial court did not err in ordering Employer to provide the requested information. We further conclude the information Employee seeks is relevant to her claim for workers' compensation benefits, is relevant to her burden of proving the compensability of the work-related accident, and is relevant to proving the nature and extent of any injuries and disabilities she claims was caused by the incident.

*Motion for Protective Order*

The Tennessee Court of Appeals has addressed requirements for seeking a protective order in civil litigation. In *In re NHC – Nash. Fire Litig.*, 293 S.W.3d 547 (Tenn. Ct. App. 2008), which involved a number of lawsuits filed against the operator of a nursing home, a newspaper intervened to ask the trial court to unseal certain discovery materials that were subject to a protective order. *Id.* at 551. The defendant objected to the request, and the trial court "lifted the seal" on many discovery documents but left its protective order in place for others. *Id.* The intervening newspaper then appealed. *Id.*

In addressing a trial court's discretion regarding the scope of discovery, the Court of Appeals first stated that Tennessee's general rule is one of openness. "Tennessee courts have long recognized that judicial proceedings are presumptively open." *Id.* at 560; *see also* TENN. CONST. art. I, § 17 ("all courts shall be open"); Tenn. Code Ann. § 50-6-239(c)(4) ("All hearings before the workers' compensation judge shall be open to the public."). The Court then explained that "[t]he openness of judicial proceedings extends to judicial records." *Id.* With respect to written discovery, the court stated:

> The trial court's inherent supervisory authority over its own records and files, then, is the genesis of Rule 26.03 of the Tennessee Rules of Civil Procedure. Rule 26.03 provides that, upon motion by any party and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . . Such "protective orders" limit access to certain documents or information, or withhold documents from public view.

*Id.* at 561 (internal quotation marks omitted).

As the Tennessee Supreme Court has explained: "Protective orders are intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *Ballard v. Herzke*, 924 S.W.2d 652, 658 (Tenn. 1996). The Court further clarified that it is the party who seeks to protect certain information from disclosure that has the burden of showing "good

cause" to prevent disclosure of the information under Rule 26.03. *Id.* Importantly, the Court also declared that "[t]o establish good cause . . . , the moving party must show that disclosure will result in a *clearly defined injury* to the party seeking closure." *Id.* (emphasis added). Further, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not amount to a showing of good cause." *Id.* (internal citation and quotation marks omitted).

Here, Employer insists the trial court committed legal error by failing to engage in the appropriate balancing test, compelling the disclosure of certain information, and declining to enter a protective order. We disagree.

First, Employer did not seek to establish good cause for a protective order in its third motion for such an order. Instead, it argued that: (1) it had adequately responded to Employee's written discovery requests; (2) Employee's discovery requests were "unreasonably cumulative or duplicative or [the information] is obtainable from some other source that is more convenient"; (3) Employee's discovery requests were "unduly burdensome or expensive"; and (4) the court should enter a protective order to "protect [it] from annoyance, embarrassment, oppression, or undue burden or expense." We conclude that none of the reasons Employer provided for its decision not to fully respond to Employee's discovery requests constituted good cause for a protective order based on the information and evidence presented to date.[5]

Second, Employer's counsel asserted that some of the information being sought by Employee through her written discovery requests was "protected, confidential information." Yet, Employer offered no evidence of any kind to support that assertion. Statements and arguments of counsel are not evidence and are not a substitute for testimony. *Elliott v. Cobb*, 320 S.W.3d 246, 250 (Tenn. 2010). There are no sworn statements in the form of deposition testimony, affidavits, or Rule 72 declarations from any officer, manager, or supervisor of Employer asserting that certain information Employee seeks constitutes "proprietary materials," "trade secrets," or "protected, confidential information" and/or explaining why it should be protected from disclosure.

Third, Employer insists that the information Employee seeks should be protected from disclosure because Employee "has yet to articulate any disputes pertaining to [her entitlement to] benefits" under Tennessee's Workers' Compensation Law. As we discussed above, because there are no stipulations obviating the need for evidence of compensability or the nature and extent of Employee's injuries or resulting disability, if any, her burden of proof at trial has not changed. Thus, Employee is entitled to obtain

---

[5] During oral argument, counsel for Employee acknowledged that the decision to serve certain discovery requests in the workers' compensation case as opposed to seeking it through discovery, subpoena, or otherwise in the third-party tort action is, in part, a tactical decision. Counsel for Employee asserts, however, that any such discovery requests are appropriate as long as the information being sought is relevant to the workers' compensation case or likely to lead to the discovery of admissible evidence.

information from Employer that is relevant or reasonably calculated to lead to the discovery of admissible evidence pertaining to the compensability of the incident and/or the nature or extent of any injuries or disabilities she alleges to have suffered.

We conclude that the facts and circumstances surrounding the carbon monoxide leak, its cause, intensity, and duration, and the subsequent investigations of that incident, are relevant to Employee's claim for workers' compensation benefits.[6] Employee's discovery requests, including Interrogatories 1, 2, 20, and 21 and Requests for Production 19 and 20, seek information that is relevant or reasonably calculated to lead to the discovery of admissible evidence.

In response to Employer's argument that the trial court failed to engage in the proper balancing test mandated by the Supreme Court, we conclude that Employer has failed to provide anything for the court to "balance." Employer has yet to explain why the information Employee seeks, such as the names of individuals involved in the investigation of the carbon monoxide leak that caused her injury, or copies of the investigative reports that may address the extent, intensity, and duration of the carbon monoxide leak, are subject to protection from disclosure. Moreover, the trial court explicitly discussed the "balancing of numerous considerations," including relevance, the possibility that the information will lead to the discovery of admissible evidence, claims of privilege, the need to protect privacy, and the need to protect parties from annoyance, embarrassment, oppression, or undue burden or expense. In short, the trial court sought to engage in exactly the balancing test mandated by the Tennessee Supreme Court, but Employer failed to provide anything to balance against the broad scope of discovery authorized by Rule 26.

Here, Employer has produced no evidence establishing good cause for the trial court to enter a protective order. There is no evidence to support an argument that the requested information is unduly burdensome or unreasonably expensive to produce, and there is no evidence that some of the information is "proprietary, "confidential," or "trade secrets." Finally, there is no evidence that Employee's discovery requests were served to "annoy," "harass," or "oppress" Employer. Thus, we conclude the trial court did not abuse its discretion in declining to enter a protective order at this stage of the case.

*Requirements of Tennessee Rule of Civil Procedure 33.01*

Tennessee Rule of Civil Procedure 33.01 states that "[a]ny party" may serve upon "any other party" written interrogatories "to be answered by the party served or, if the party served is a public or private corporation . . ., by an officer or agent." Tenn. R. Civ. P. 33.01. Moreover, the answers are to be "signed by the person making them" and each response must be answered "fully in writing *under oath*." *Id.* (emphasis added).

---

[6] The fact that such information may *also* be relevant to Employee's third-party tort action is immaterial to our analysis.

Here, Employer insists that the claims representative, who is employed by a third-party administrator handling Employer's workers' compensation claims, had the authority as Employer's agent to attest to the accuracy and completeness of its interrogatory responses on its behalf. Yet, the Rule 72 Declaration signed by the claims representative in September 2025 does not, in any express terms, state that she acts as an agent of Employer or that she has the authority to sign, *under oath*, responses to interrogatories. Instead, the claims representative merely affirmed that she had "reviewed discovery responses answering Employee's Interrogatories and Requests for Production, and all responses were accurate *to the best of [her] knowledge.*" It is undisputed that the claims representative is not an employee, officer, manager, or supervisor of Employer. In her rule 72 Declaration, the claims representative does not assert that she has personal knowledge of any of the facts reflected in Employer's responses to the interrogatories. She has not declared that she is acting as an agent of Employer, that she is the person making the responses, or that she has the authority to sign, *under oath*, interrogatory responses on behalf of employer. As a result, we conclude that Employer has, to date, failed to comply with Rule 33.01. Thus, the trial court did not err in determining that Employer has not complied with its earlier orders addressing the numerous discovery disputes that have arisen in this case.

*Frivolous Appeal*

Finally, Employee asks that we find Employer's appeal frivolous. As we have noted previously, a frivolous appeal is one that is devoid of merit or brought solely for delay. *Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016) (citing *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978)). Stated another way, "[a] frivolous appeal is one that . . . had no reasonable chance of succeeding." *Adkins v. Studsvik, Inc.*, No. E2014-00444-SC-R3-WC, 2015 Tenn. LEXIS 588, at *30 (Tenn. Workers' Comp. Panel July 21, 2015) (citations omitted). Moreover, parties should not be required to endure the hassle and expense of baseless litigation. *Clark v. Nash. Mach. Elevator Co.*, 129 S.W.3d 42, 50 n.4 (Tenn. 2004). Nor should appellate courts be required to waste time and resources on appeals that have no realistic chance of success. *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977). In circumstances where we determine that "an appeal was frivolous or taken solely for delay," we may, "either upon motion of a party or of [our] own motion, with or without remand, assess a penalty and/or award expenses, including reasonable attorney's fees, incurred by the appellee as a result of the appeal." Tenn. Comp. R. & Regs. 0800-02-22-.09(4) (2023).

We conclude Employer's appeal is frivolous. Employer's arguments against Employee's efforts to obtain information relevant to the work-related accident that she asserts directly caused her alleged injuries and disabilities are specious. The results of an investigation into the cause of a workplace accident, how that investigation was conducted, and the identities of the individuals who participated in that investigation, are

fundamentally relevant to an injured worker's claim for workers' compensation benefits. None of Employer's arguments presented in this appeal raised any serious doubt as to the relevance of the requested information, explained why such information should be protected from disclosure, or described a "clearly defined injury" that could result from the disclosure of the information. *Ballard*, 924 S.W.2d at 658. In short, Employer's appeal had no reasonable chance of succeeding. Accordingly, on remand, the trial court should consider what, if any, damages, including reasonable attorney's fees and costs, should be assessed for this frivolous appeal.

## Conclusion

For the foregoing reasons, we affirm the trial court's order in all respects, find Employer's appeal frivolous, and remand the case. Costs on appeal are taxed to Employer.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| Candie Marie Hernandez | Docket No.  2024-30-6638 |
|---|---|
| v. | State File No.  30126-2024 |
| Wal-Mart Associates, Inc., et al. | |

| Appeal from the Court of Workers' Compensation Claims Pamela B. Johnson, Judge | Heard February 12, 2026 in Knoxville, Tennessee |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 27th day of February, 2026.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| A. Allen Grant Scott Morell | | | | X | agrant@hrslawga.com smorell@hrslawga.com mscott@hrslawga.com rfreemon@hrslawga.com |
| Brad C. Burnette | | | | X | brad@foxlawtn.com andrea@foxlawtn.com |
| Pamela B. Johnson, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov